[No. S157197. July 2, 2009.]

SUZAN HUGHES, Plaintiff and Appellant, v.
CHRISTOPHER PAIR, Defendant and Respondent.

## COUNSEL

Hillel Chodos and Deborah Chodos for Plaintiff and Appellant.

Knee, Ross & Silverman and Melanie C. Ross for Defendant and Respondent.

June Babiracki Barlow, Neil Kalin and Grant Michiaki Habata for California Association of Realtors as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**KENNARD, J.**—An employer who sexually harasses an employee can be liable for damages under both federal law (title VII of the Civil Rights Act of 1964 (Title VII)) and California law (the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)) when the sexually harassing conduct is so *pervasive* or *severe* that it alters the conditions of employment. (See *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283–284 [42 Cal.Rptr.3d 2, 132 P.3d 211] (*Lyle*).)

At issue here is California's Civil Code section 51.9, which prohibits sexual harassment in certain business relationships *outside* the workplace. This statute, enacted after the federal law's Title VII and California's FEHA, expressly limits liability to harassing conduct that is "pervasive or severe," the same words used to define liability under Title VII and the FEHA. Considering the presence of those words in section 51.9 to be significant, the trial court in this case granted defendant's motion for summary judgment, which the Court of Appeal affirmed in a two-to-one decision. Both courts concluded that by its use of the words "pervasive or severe," California's Legislature intended to incorporate into section 51.9 the liability limitations governing workplace sexual harassment suits brought under Title VII and the FEHA. We agree, and we affirm the Court of Appeal's judgment.

## I

In reviewing a trial court's grant of summary judgment, we apply the following rules: " '[W]e take the facts from the record that was before the trial court when it ruled on that motion' " and " ' " 'review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " ' " (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206 [74 Cal.Rptr.3d 570, 180 P.3d 321], quoting *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123].) In addition, we " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Lonicki*, at p. 206, quoting *Yanowitz*, at p. 1037.)

In 1998, Suzan and Mark Hughes ended their marriage. They had a son, Alex, who was then a minor. Under their marital dissolution agreement, Mark, the founder of Herbalife International, Inc., a nutritional supplements company, was to pay Suzan, the third of his four wives, spousal support of $400,000 each year for 10 years, ending in March 2008.

On May 21, 2000, Mark Hughes died, leaving some $350 million in trust for the sole benefit of Alex. Named as trustees were Conrad Klein, Jack Reynolds, and defendant Christopher Pair, who had been a high-ranking executive at Herbalife and became its president after Mark's death. Since June 2001, plaintiff Suzan Hughes, as Alex's guardian, has initiated several lawsuits against the trust and its trustees.

On June 13, 2005, plaintiff requested on Alex's behalf that the trust provide $160,000 for a two-month rental of a beach house in Malibu. Three days later, the trustees unanimously rejected the request, agreeing to $80,000

for one month's rental. On June 22, 2005, the trustees conveyed this information to plaintiff's attorney, who so advised plaintiff sometime before June 27.

On June 27, in the late afternoon, plaintiff received a telephone call from defendant, to whom she had not spoken for at least three years. Defendant said he was calling to invite Alex, who was then 13 years old, to accompany him and his nine-year-old son to a private showing of the King Tut exhibit that evening at the Los Angeles County Museum of Art. The sponsor of the event was an investment bank, Goldman Sachs, which managed the assets of Alex's trust.

During the conversation, defendant called plaintiff "sweetie" and "honey," and said he thought of her "in a special way, if you know what I mean." When plaintiff asked why the trustees had authorized payment for the Malibu house rental for just one month, defendant suggested that he could be persuaded to cast his vote for an additional month if plaintiff would be "nice" to him. He added: "You know everyone always had a thing for you. You are one of the most beautiful, unattainable women in the world. Here's my home telephone number and call me when you're ready to give me what I want." Responding to plaintiff's retort that his comments were "crazy," defendant said: "How crazy do you want to get?"

That evening, plaintiff took Alex to the private showing at the museum. Defendant was there with his son. After greeting Alex, defendant told plaintiff: "I'll get you on your knees eventually. I'm going to fuck you one way or another."

In August 2005, plaintiff sued defendant. Her complaint alleged that defendant's June 27 statements, first on the telephone and later that evening at the museum, constituted intentional infliction of emotional distress as well as sexual harassment under Civil Code section 51.9. Defendant, in answering the complaint, denied making the statements. He then moved for summary judgment, asserting that even if it were assumed that the complaint's allegations were true, plaintiff had stated no claim for relief. (See *Mulkey v. Reitman* (1966) 64 Cal.2d 529, 532 [50 Cal.Rptr. 881, 413 P.2d 825].) The trial court granted the motion, and it dismissed the case.

A divided Court of Appeal panel affirmed. The majority concluded that because defendant's statements underlying plaintiff's claim of sexual harassment were not "pervasive" or "severe" within the meaning of either federal or California employment discrimination law, those statements were likewise insufficient to meet Civil Code section 51.9's express requirement that the complained-of conduct be "pervasive or severe" before liability for sexual

harassment can be imposed. It also held that the statements in question were insufficient to support a cause of action for intentional infliction of emotional distress.

In the view of the dissenting justice, however, the presence of the words "pervasive or severe" in Civil Code section 51.9 did not indicate an intent by the Legislature to import into that statute the holdings of court decisions that have construed California and federal employment discrimination laws as imposing liability for sexual harassment only when the conduct is "pervasive" or "severe." That justice would have allowed the case to proceed to a jury trial on the complaint's causes of action for sexual harassment under section 51.9 and for intentional infliction of emotional distress.

We granted plaintiff's petition for review.

## II

We begin with a brief overview of the federal and California laws prohibiting sexual harassment *in the workplace.*

### A. *Federal Law*

Enacted in 1964, Title VII (42 U.S.C. § 2000e et seq.) defines as "an unlawful employment practice" discrimination by an employer based on an applicant's or employee's "race, color, religion, *sex*, or national origin." (42 U.S.C. § 2000e-2(a)(1), italics added.) The prohibition covers employment decisions and conduct affecting "compensation, terms, conditions, or privileges of employment." (*Ibid.*)

An employer violates Title VII by refusing to hire or promote someone solely because of that person's gender. (*Automobile Workers v. Johnson Controls, Inc.* (1991) 499 U.S. 187, 197 [113 L.Ed.2d 158, 111 S.Ct. 1196].) Such conduct is sex discrimination. (*Ibid.*)

Title VII treats sexual harassment as another form of sex discrimination. (*Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 64 [91 L.Ed.2d 49, 106 S.Ct. 2399] (*Meritor*).) Just as an employee who is subjected to the loss of some " 'economic' or 'tangible' " job benefit as the result of sex discrimination can sue under Title VII (*Meritor, supra,* at p. 64), so can an employee who is subjected to " '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature' " (*id.* at p. 65). As the high court explained in *Meritor*: " 'Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment

is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.' " (*Id.* at p. 67.)

Federal law recognizes two forms of sexual harassment. One is a demand for sexual favors in return for a job benefit; this is known as "quid pro quo harassment." (*Burlington Industries, Inc. v. Ellerth* (1998) 524 U.S. 742, 753 [141 L.Ed.2d 633, 118 S.Ct. 2257], italics omitted (*Ellerth*).) The other is sexually harassing conduct that, although not resulting in the loss of or denial of any job benefit, is so "severe or pervasive" as to create a hostile work environment. (*Id.* at p. 752.) The terms "quid pro quo" and "hostile work environment" are not in Title VII's text; they first turned up in academic literature, found their way into federal appellate decisions, and after their mention by the high court in *Meritor, supra,* 477 U.S. 57, "acquired their own [legal] significance." (*Ellerth, supra,* at p. 752.)

Under Title VII, sexual harassment is considered "severe or pervasive" only when it " ' "alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment." ' " (*Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 270 [149 L.Ed.2d 509, 121 S.Ct. 1508].) Taken into account must be the surrounding circumstances, such as the " ' "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' " (*Id.* at pp. 270–271.) Thus, " 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes' " in employment conditions. (*Id.* at p. 271; see also *Faragher v. Boca Raton* (1998) 524 U.S. 775, 787–788 [141 L.Ed.2d 662, 118 S.Ct. 2275].)

### B. *California Law*

Like federal law, California law prohibits sexual harassment in the workplace. Originally enacted in 1980, Government Code section 12940 is part of the FEHA. (See Gov. Code, § 12900 et seq.) It defines "an unlawful employment practice" as an employer's refusal to hire, employ, or select for a training program leading to employment, any person because of that person's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, *sex*, age, or sexual orientation." (Gov. Code, § 12940, subd. (a), italics added.) Since 1985, the FEHA has prohibited sexual harassment of an employee. (See Gov. Code, § 12940, subd. (j)(1).)

With respect to sexual harassment in the workplace (see Gov. Code, § 12940, subd. (j)(4)(C)), the prohibited conduct ranges from expressly or

impliedly conditioning employment benefits on submission to, or tolerance of, unwelcome sexual advances to the creation of a work environment that is "hostile or abusive to employees because of their sex." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462 [30 Cal.Rptr.3d 797, 115 P.3d 77] (*Miller*).) Thus, similar to the federal law's Title VII, California's FEHA "recognize[s] two theories of liability for sexual harassment claims . . . '. . . quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances . . . [and] hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment.' " (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 149 [124 Cal.Rptr.2d 1], citations omitted (*Herberg*); accord, *Miller, supra*, at pp. 461–462.)

Although there are some differences in the wording of the federal law's Title VII and California's FEHA, these laws share the same antidiscriminatory goals and serve the same public policies. (*Lyle, supra*, 38 Cal.4th 264, 278.)

In construing California's FEHA, this court has held that the hostile work environment form of sexual harassment is actionable only when the harassing behavior is *pervasive* or *severe*. (*Miller, supra*, 36 Cal.4th at p. 462.) This limitation mirrors the federal courts' interpretation of Title VII. (*Miller*, at p. 462.) To prevail on a hostile work environment claim under California's FEHA, an employee must show that the harassing conduct was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex." (*Miller, supra*, at p. 462; see *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130 [87 Cal.Rptr.2d 132, 980 P.2d 846].) There is no recovery "for harassment that is occasional, isolated, sporadic, or trivial." (*Lyle, supra*, 38 Cal.4th at p. 283.)

Courts that have construed federal and California employment discrimination laws have held that an employee seeking to prove sexual harassment based on no more than a few isolated incidents of harassing conduct must show that the conduct was "severe in the extreme." (*Herberg, supra*, 101 Cal.App.4th at p. 151; accord, *Lyle, supra*, 38 Cal.4th at p. 284, citing *Herberg* with approval; see *Candelore v. Clark County Sanitation Dist.* (9th Cir. 1992) 975 F.2d 588, 590 [isolated incidents of sexual horseplay over number of years held insufficient]; *Saxton v. American Tel. & Tel. Co.* (7th Cir. 1993) 10 F.3d 526, 528, 534–535 [summary judgment for defendant upheld where defendant rubbed and kissed plaintiff on one occasion and groped her on another].) A single harassing incident involving "physical violence or the threat thereof" may qualify as being severe in the extreme. (*Herberg, supra*, 101 Cal.App.4th at p. 151; accord, *Lyle, supra*, 38 Cal.4th at p. 284.)

Under California's FEHA, as under the federal law's Title VII, the existence of a hostile work environment depends upon "the totality of the circumstances." (*Miller, supra,* 36 Cal.4th at p. 462.) We said in *Lyle, supra,* 38 Cal.4th at page 284, that "[t]o be actionable, 'a sexually objectionable environment must be both objectively and subjectively offensive . . . .' " Therefore, "a plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail . . . if a reasonable person . . . , considering all the circumstances, would not share the same perception." (*Ibid.*)

## III

In part II, *ante,* we briefly summarized the federal law's Title VII and California's FEHA insofar as they deal with sexual harassment in the workplace. We now turn to sexual harassment in certain business relationships *outside* the workplace. In California, there is a specific statute, Civil Code section 51.9, that covers that topic.

In 1994, the Legislature enacted Civil Code section 51.9 to address "relationships between providers of professional services and their clients." (Stats. 1994, ch. 710, § 1, p. 3432.)[1] The statute sets out a nonexclusive list of such providers, which includes physicians, psychiatrists, dentists, attorneys, real estate agents, accountants, bankers, building contractors, executors, *trustees,* landlords, and teachers; also falling within the statute's reach is sexual harassment in any "relationship that is substantially similar to" those specifically listed. (Civ. Code, § 51.9, subd. (a)(1)(A)–(F).)

Under Civil Code section 51.9, a plaintiff must establish not only that a qualifying "relationship" (Civ. Code, § 51.9, subd. (a)(1)) exists, but also that the relationship is one that the plaintiff cannot "easily terminate" (*id.,* subd. (a)(3)). And the plaintiff must show both that "[t]he defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and *pervasive or severe*" (*id.,* subd. (a)(2), italics added) and that such conduct caused some "economic loss or disadvantage or personal injury" (*id.,* subd. (a)(4)). The statute further provides: "The definition of sexual harassment and the standards for determining liability set forth in this

---

[1] Civil Code section 51.9 has sometimes been described as being part of the Unruh Civil Rights Act, presumably because of that statute's close proximity in the Civil Code to the Unruh Civil Rights Act, which appears in section 51 of the Civil Code. (See *Brown v. Smith* (1997) 55 Cal.App.4th 767, 774–775 [64 Cal.Rptr.2d 301].) But Civil Code section 51 is the only statute comprising the Unruh Civil Rights Act. As that statute states, "*This section* shall be known, and may be cited, as the Unruh Civil Rights Act." (Civ. Code, § 51, italics added; see *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 757 [120 Cal.Rptr.2d 550].)

section shall be limited to determining liability only with regard to a cause of action brought under this section." (*Id.*, subd. (d).)

Civil Code section 51.9, which became law 30 years after the enactment of Title VII by the United States Congress and nine years after California's Legislature decreed sexual harassment to be a violation of the FEHA, limits liability to sexually harassing conduct that is "pervasive or severe." As discussed earlier, this is the same test that the courts have applied to actionable hostile work environment claims under both Title VII and the FEHA.

Here, plaintiff alleges that defendant's conduct violated Civil Code section 51.9. In affirming the trial court's grant of summary judgment for defendant, the Court of Appeal majority concluded that his alleged statements to plaintiff, all occurring on one day, were neither "pervasive" nor "severe" within the meaning of section 51.9. In so holding, the Court of Appeal gave the terms "pervasive" and "severe," that appear in section 51.9—which deals with sexual harassment in certain professional relationships *outside the workplace*—the same meaning that federal and California courts have given to those identical terms in the context of sexual harassment *in the workplace*. Defendant urges us to adopt the reasoning of the Court of Appeal majority.

Plaintiff, by contrast, wants us to agree with the dissenting Court of Appeal justice that those court decisions pertaining to sexual harassment in the workplace are not controlling when, as here, the sexually harassing conduct occurs in a professional relationship outside the workplace. Under this view, the phrase "pervasive or severe" appearing in Civil Code section 51.9, subdivision (a)(2), has no defined meaning and thus is not tethered to the terms "pervasive" and "severe" as used in the employment setting. Rather, according to the dissenting Court of Appeal justice, the determination whether the alleged sexually harassing conduct here was "pervasive or severe" presents a factual question for the jury.

■ In construing the terms "pervasive or severe" in Civil Code section 51.9, we apply well-established rules. Our task is to ascertain legislative intent so we can "effectuate the purpose of the law." (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268 [121 Cal.Rptr.2d 203, 47 P.3d 1069]; accord, *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 888 [80 Cal.Rptr.3d 690, 188 P.3d 629].) We begin with the statutory language, which is usually the most reliable indicator of legislative intent. (*Miklosy, supra*, at p. 888; *City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625 [26 Cal.Rptr.3d 304, 108 P.3d 862].) Ordinarily, if that language is susceptible of only one meaning, " 'we presume the Legislature meant what it said, and the plain meaning of the statute controls.' " (*Miklosy,*

*supra*, at p. 888; see *Esberg v. Union Oil Co., supra*, at p. 268.) When statutory language is reasonably subject to more than one interpretation, however, we may consider "extrinsic aids, such as legislative history." (*Miklosy, supra*, at p. 888; see *Lonicki v. Sutter Health Central, supra*, 43 Cal.4th at pp. 209–210.) But we also look to legislative history to confirm our plain-meaning construction of statutory language. (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 943 [63 Cal.Rptr.3d 50, 162 P.3d 569]; *Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1137 [57 Cal.Rptr.3d 306, 156 P.3d 328].)

▪ When statutory language includes words or terms that courts have previously construed, "the presumption is almost irresistible" that the Legislature intended them to have the same "precise and technical" meanings given by the courts. (*City of Long Beach v. Payne* (1935) 3 Cal.2d 184, 191 [44 P.2d 305]; accord, *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050 [77 Cal.Rptr.3d 226, 183 P.3d 1199]; *People v. Lawrence* (2000) 24 Cal.4th 219, 231 [99 Cal.Rptr.2d 570, 6 P.3d 228].)

▪ Subdivision (a)(2) of Civil Code section 51.9 allows liability for instances of sexually harassing conduct that qualify as either "pervasive or severe." Those terms are not defined in the statute. As discussed earlier, those words have long been associated with workplace sexual harassment law embodied in the federal law's Title VII and in California's FEHA. Applying here the legal presumption that a statute's use of terms that have a well-settled judicial construction indicates the Legislature's intent that the terms retain the same meaning that the courts have placed upon them (*Richardson v. Superior Court, supra*, 43 Cal.4th at p. 1050), we agree with the Court of Appeal majority, and defendant, that the words "pervasive or severe" in section 51.9 should be given the same meaning that those words have in the employment context. This conclusion also finds ample support in the statute's legislative history, as discussed below.

Civil Code section 51.9, as originally enacted in 1994, included these requirements for liability: "The defendant has made sexual advances, solicitations, sexual requests, or demands for sexual compliance by the plaintiff that were unwelcome and *persistent* or severe, *continuing after a request by the plaintiff to stop*." (Civ. Code, former § 51.9, subd. (a)(2), as added by Stats. 1994, ch. 710, § 2, p. 3432, italics added.) In 1999, the Legislature made several changes to the statute. Notably, it amended the statute's subdivision (a)(2) to read as it does now, by replacing the word "persistent," italicized above, with "pervasive," and by deleting the above-italicized phrase "continuing after a request by the plaintiff to stop." (Stats. 1999, ch. 964, § 1.) In addition, after the words "sexual compliance by the plaintiff" in the same subdivision, the Legislature added this phrase: "or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile

nature based on gender." (§ 51.9, subd. (a)(2).) Thus, as amended in 1999, subdivision (a)(2) of section 51.9 now imposes liability when "[t]he defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe."

The 1999 amendments to Civil Code section 51.9 also deleted a requirement in former subdivision (d) that the plaintiff's complaint be verified, and deleted the phrase "without tangible hardship" formerly contained in subdivision (a)(3), which now provides simply that the plaintiff must show "an inability . . . to easily terminate" the sexually abusive relationship.

The 1999 amendments to Civil Code section 51.9 were authored by Assemblywoman Dion Aroner as Assembly Bill No. 519 (1999–2000 Reg. Sess.). The analysis by the Senate Rules Committee described the bill as "revis[ing] the Civil Code prohibitions against sexual harassment in professional and business settings to generally conform to the legal standards for filing sexual harassment claims in the employment setting." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 519 (1999–2000 Reg. Sess.) as amended June 10, 1999, p. 1 (Senate Analysis of Assembly Bill 519).) The analysis noted that the original version of section 51.9 had "established standards for sexual harassment in the Civil Code which do not comport with other California and federal sexual harassment prevention measures." (Sen. Analysis, at p. 3.)

With respect to the bill's substitution of the word "pervasive" for the term "persistent," which appeared in the original version of Civil Code section 51.9, the legislative analysis explained: "Section 51.9 currently uses the term 'persistent' when setting forth the showing required to prove sexual harassment. This term is not used by federal or state courts, or any administrative agency, in either employment or housing cases. Instead, both state and federal decisions have uniformly required a showing that the harassment be 'pervasive' but not necessarily of a 'persistent' nature. (See Fisher v. San Pedro Community Hospital (1989) 214 Cal.App.3d 590, 608 [262 Cal.Rptr. 842].) [¶] The traditional analysis was provided by the court in Meritor Savings Bank v. Vinson[, supra,] 477 U.S. 57, 64–67 . . . . 'For sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." ' " (Sen. Analysis of Assem. Bill 519, supra, at pp. 3–4.) The legislative analysis further noted that the bill's proponents "assert that the bill is needed in order to prevent the conflicting definitions of sexual harassment contained in the Civil and Government Codes from causing interpretation problems in the courts." (Id. at p. 7.)

██ This history of the amendments to Civil Code section 51.9 leaves no doubt of the Legislature's intent to conform the requirements governing liability for sexual harassment in professional relationships *outside the workplace* to those of the federal law's Title VII and California's FEHA, both of which pertain to liability for sexual harassment *in the workplace*. Under both laws, an employee plaintiff who cannot prove a demand for sexual favors in return for a job benefit (that is, quid pro quo harassment) must show that the sexually harassing conduct was so *pervasive or severe* as to alter the conditions of employment. With respect to liability under section 51.9, which covers a wide variety of business relationships outside the workplace, the relevant inquiry is whether the alleged sexually harassing conduct was sufficiently pervasive or severe as to alter the conditions of the business relationship. This inquiry must necessarily take into account the nature and context of the particular business relationship. With this analytical framework in mind, we now consider plaintiff's claim of sexual harassment under section 51.9.

## IV

As just explained, the Legislature intended to conform Civil Code section 51.9 to the California and federal laws pertaining to sexual harassment in the workplace. Therefore, we find guidance in the holdings and reasoning of court decisions dealing with sexual harassment in the workplace in determining whether plaintiff here has a viable cause of action under section 51.9, which applies to professional relationships outside the workplace.

We first consider whether plaintiff's factual allegations are sufficient to establish a claim for the hostile environment form of sexual harassment. Like both California and federal employment discrimination law, Civil Code section 51.9 provides a remedy for this form of sexual harassment only if the harassing conduct was either "pervasive or severe."

██ Here, defendant's sexually harassing conduct, as plaintiff has described it, was not "pervasive" within the meaning of Civil Code section 51.9—that is, it was not so egregious as to alter the conditions of the underlying professional relationship. (See *Clark County School Dist. v. Breeden, supra,* 532 U.S. at p. 270; *Meritor, supra,* 477 U.S. at p. 67; accord, *Miller, supra,* 36 Cal.4th at p. 462.) To be *pervasive,* the sexually harassing conduct must consist of "more than a few isolated incidents." (*Lyle, supra,* 38 Cal.4th at p. 284.) That standard has not been met here. As we have explained, the alleged sexual harassment consisted only of comments defendant made to plaintiff during a single telephone conversation and a brief statement defendant made to plaintiff in person later that day during a social event at a museum.

■ Nor was defendant's alleged conduct "severe" within the meaning of Civil Code section 51.9. As noted earlier (see *ante*, at p. 1043), employment law acknowledges that an isolated incident of harassing conduct may qualify as "severe" when it consists of "a *physical* assault or the threat thereof." (*Lyle*, *supra*, 38 Cal.4th at p. 284, italics added; see *Herberg*, *supra*, 101 Cal.App.4th at p. 151.) Here, plaintiff contends that defendant threatened her with physical violence when he told her at the museum: "I'll get you on your knees eventually. I'm going to fuck you one way or another." We disagree with plaintiff's characterization. Although vulgar and highly offensive, this remark, which was made in the presence of other people attending a private showing at a museum, would not plausibly be construed by a reasonable trier of fact as a threat to commit a sexual assault on plaintiff. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Most reasonably construed, defendant's comment was a threat, not of physical violence, but of financial retaliation: that he would use his power as a trustee to thwart plaintiff's requests to allocate funds from the trust established for her son Alex. But such a threat will not support a claim under section 51.9 for the hostile environment form of sexual harassment, because it does not constitute "severe" harassing conduct. (*Lyle*, *supra*, 38 Cal.4th at p. 284; *Herberg*, *supra*, 101 Cal.App.4th at p. 151.)

We consider next whether plaintiff has alleged facts establishing a violation of Civil Code section 51.9 based on the quid pro quo form of sexual harassment. As we explain below, plaintiff's factual allegations are insufficient under this theory as well.

■ Civil Code section 51.9 prohibits "solicitations, sexual requests, [and] demands for sexual compliance," thus allowing a plaintiff to sue for the quid pro quo form of sexual harassment. As noted earlier, both Title VII and the FEHA impose liability for quid pro quo sexual harassment in the workplace. (See *ante*, at pp. 1042–1043.) To establish quid pro quo sexual harassment under these employment laws, a plaintiff must show "that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." (*Ellerth*, *supra*, 524 U.S. 742, 753; see also *Miller*, *supra*, 36 Cal.4th at p. 461; *Kohler v. Inter-Tel Technologies* (9th Cir. 2001) 244 F.3d 1167, 1179 [a plaintiff seeking to establish quid pro quo harassment based on *rejection* of a defendant's request for sexual favors must show a causal connection between that rejection and some adverse employment action]; *Cram v. Lamson & Sessions Co.* (8th Cir. 1995) 49 F.3d 466, 473 [same]; *Kauffman v. Allied Signal, Inc.* (6th Cir. 1992) 970 F.2d 178, 186 [same].) But a claim involving "only unfulfilled threats . . . should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct." (*Ellerth*, *supra*, at p. 754.)

In this case, plaintiff's factual allegations provide two potential bases for a claim of quid pro quo sexual harassment: First, plaintiff alleges that defendant made comments to her near the end of their June 27, 2005 telephone conversation that if she would be "nice" to him, he could, in his capacity as one of three trustees of the $350 million trust fund that plaintiff's deceased former husband had established for their young son, be persuaded to vote to approve another $80,000 for a second month's rental of the beach house in Malibu. (See *ante*, at pp. 1039–1040.) Second, she has alleged that defendant told her he would "fuck [her] one way or another." As we explained (see *ante*, at p. 1049), this crude statement, considered in the context in which it allegedly was made, is most reasonably construed as a threat that, unless plaintiff granted him sexual favors, he would use his authority, as a trustee of the trust set up for plaintiff's son Alex, to deny plaintiff's requests for funds.

These allegations are insufficient to establish quid pro quo sexual harassment, however, because they amount at most to unfulfilled threats. Plaintiff has not alleged that, because she rejected his sexual overtures, defendant thereafter followed through on his alleged threat by using his authority, as one of three trustees administering the trust that plaintiff's deceased former husband had set up for their young son, to cause financial injury or hardship to plaintiff or to her son. Because plaintiff has identified no tangible retaliatory conduct by defendant in the context of their professional relationship, plaintiff's claim is properly treated as a claim for hostile environment sexual harassment. (*Ellerth, supra*, 524 U.S. at p. 754.) As we have already concluded, plaintiff's factual allegations fail to establish the "severe" or "pervasive" conduct necessary to pursue a claim of hostile environment sexual harassment under Civil Code section 51.9.

## V

Our grant of review included the issue whether the trial court properly granted summary judgment on plaintiff's claim for intentional infliction of emotional distress. The Court of Appeal majority held that it did. We agree.

■ A cause of action for intentional infliction of emotional distress exists when there is " ' " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' " ' " (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001 [25 Cal.Rptr.2d 550, 863 P.2d 795]; see *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 [2 Cal.Rptr.2d 79, 820 P.2d 181].) A defendant's conduct is "outrageous" when

it is so " ' "extreme as to exceed all bounds of that usually tolerated in a civilized community." ' " (*Potter*, at p. 1001.) And the defendant's conduct must be " ' "intended to inflict injury or engaged in with the realization that injury will result." ' " (*Ibid.*)

■ Liability for intentional infliction of emotional distress " 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' (Rest.2d Torts, § 46, com. d.)" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1122 [252 Cal.Rptr. 122, 762 P.2d 46], overruled on another ground in *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th 826, 853, fn. 19; see *Intel. Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1347 [1 Cal.Rptr.3d 32, 71 P.3d 296] [harassing e-mails might constitute intentional infliction of emotional distress]; *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 809 [52 Cal.Rptr.3d 376] [anonymous e-mails graphically threatening physical harm insufficient]; see *Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 229–230 [192 Cal.Rptr. 492] [threats of harm or death to plaintiff and his family for failure to sign new union agreement sufficiently "outrageous"].) If properly pled, a claim of sexual harassment can establish "the outrageous behavior element of a cause of action for intentional infliction of emotional distress." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 618 [262 Cal.Rptr. 842].)

■ With respect to the requirement that a plaintiff show severe emotional distress, this court has set a high bar. "Severe emotional distress means ' "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." ' " (*Potter v. Firestone Tire & Rubber Co., supra*, 6 Cal.4th at p. 1004.)

The Court of Appeal here concluded that plaintiff failed to establish two of the three elements of a cause of action for intentional infliction of emotional distress: either extreme or outrageous conduct by defendant, or that plaintiff suffered severe or extreme emotional distress. We agree. Viewed in the context of plaintiff's legal battles, over a five-year span, with defendant and the two other trustees regarding their allocation of the trust funds, defendant's inappropriate comments fall far short of conduct that is so "outrageous" that it " ' "exceed[s] all bounds of that usually tolerated in a civilized community." ' " (*Potter v. Firestone Tire & Rubber Co., supra*, 6 Cal.4th at p. 1001.) In addition, plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of defendant's comments to her on the telephone and at the museum on June 27, 2005, do not comprise " ' "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." ' " (*Id.* at p. 1004.)

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J. Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.