Filed 2/17/21  Lee v. YRC, Inc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THOMAS LEE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>YRC, INC. et al.,<br><br>    Defendants and Respondents. | D076729<br><br><br><br>(Super. Ct. No. 37-2018-00004806-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Law Office of Bryce A. Dodds and Bryce A. Dodds, for Plaintiff and Appellant.

Morgan, Lewis & Bockius; Jason S. Mills and Julianne G. Park for Defendants and Respondents.

The trial court granted summary judgment for defendants YRC, Inc. and Robert Hagey on plaintiff Thomas Lee's claims for sex discrimination, harassment, and retaliation.  We affirm.

# BACKGROUND

*Facts*

Lee is a truck driver and dock worker who began working at YRC, a large trucking firm, in May 2016. Lee alleges that Hagey, his supervisor, sexually harassed him while working on the docks of the YRC truck terminal. He also complains about offensive, sex-related comments made by coworkers as a result of Hagey's actions, and alleges that Hagey retaliated against him.

*Actions by Hagey and Coworkers*

In the spring of 2017, Hagey punched Lee on the shoulder. Lee told Hagey not to touch him. About a month later, Hagey punched Lee's coworker on the shoulder and punched Lee on the shoulder a second time. Lee reminded Hagey that he had already told him not to touch him. On July 20, 2017, Hagey hit Lee on the buttocks with a clipboard while making a comment about work. Lee asked Hagey twice, "What the fuck do you think you're doing?" Hagey said he meant nothing by it. Lee asked Hagey if he would have hit his buttocks if he were a woman. Hagey said no.

Lee told his coworkers about being hit with the clipboard. The coworkers began to make sexually tinged comments to Lee. These included:

"Oh, you have a nice ass;"

"Don't bend over by [Hagey];"

"[Hagey's] looking at your ass."

When Lee bent over in the course of his work, a coworker said, "Damn, now I know what [Hagey] was looking at."

"Do I need to pat you on the ass to get you to come over here and do this?"

"You look sad . . . You don't miss [Hagey]?"

When someone brought a can of nuts to work, coworkers referred to the nuts with sexual connotations and asked if they were Lee's or Hagey's. Lee was offended because it insinuated that he did not mind Hagey's prior behavior.

Hagey told Lee and a coworker to "get a room" when he saw them working late into the night.

A customer outside the workplace also knew about the incident where Hagey hit Lee with a clipboard.[1]

Lee said those were all the comments that he could remember at the time of his deposition.

*YRC's Actions*

John Meade was the manager at the terminal and at another terminal in San Diego who oversaw YRC's operations where Lee worked.

Lee told Meade about the clipboard incident and the earlier touchings. In turn, Meade reported the complaint to YRC's human resources department, which then investigated the complaint. YRC disciplined Hagey with a written performance note and corrective action letter, telling Hagey to refrain from offensive or inappropriate conduct and requiring him to complete a course in interpersonal skills. Hagey did not touch Lee again. Lee's only complaint about Hagey after the disciplinary action was that Hagey made the comment to Lee and another employee to "get a room" when they were working late one night.

Lee subsequently filed a grievance with his union complaining about violence in the workplace and sexual harassment. The union determined no further action was necessary because Hagey had already been disciplined.

---

[1]    Lee alleges in his brief that the customer made harassing comments to him, but the record does not disclose the comments made or their nature. Lee stated only that the customer was aware of the clipboard incident.

Lee said he told the union shop steward about the comments that had occurred after the clipboard incident, and he talked to Meade about the comments when Meade was at the workplace. Lee, however, did not report the comments to the human resources department. Meade acknowledged that the comments Lee complained of were or could be sexual in nature, and said that he would have addressed the issue if he had heard about the comments.

A supervisor, "Paul," was present when a worker made the comment about patting Lee on the buttocks to get him to do some work. The supervisor chastised the worker and told him that the comment was not permitted in the workplace.

Guillermo Soriano replaced Meade as terminal manager. The comments Lee complained of occurred before Soriano became the terminal manager, so Soriano did not investigate those complaints. He stated he never heard the offensive comments, but would have investigated them if he had. Specifically, Soriano stated he would address a comment like, "you have a nice ass," because "[I]t's not tolerated . . . . They have to be, you know, respectful towards one another."

*Procedure*

Lee filed an amended complaint alleging six causes of action: (1) Sex Discrimination - Disparate Treatment (Gov. Code,[2] § 12940, subd. (a)); (2) Quid Pro Quo Sexual Harassment (§ 12940, subd. (j)); (3) Hostile Work Environment (§ 12940, subd. (a)); (4) Retaliation (§ 12940, subd. (h)); (5) Failure to Prevent Harassment, Discrimination, and Retaliation (§ 12940, subd. (k)); and (6) Intentional Infliction of Emotional Distress.

---

[2]    Further statutory references are to the Government Code unless otherwise specified.

4

The court granted summary judgment on July 1, 2019, and entered judgment on August 7, 2019.

Lee filed a timely appeal.

DISCUSSION

I

*Standard of Review*

We review a summary judgment or summary adjudication ruling de novo to determine whether there is a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c); *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499–500.)  We liberally construe the evidence presented in opposition to the motion, with any doubts about the evidence resolved in favor of the party opposing the motion.  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "We will affirm an order granting summary judgment . . . if it is correct on any ground that the parties had an adequate opportunity to address in the trial court. . . ." (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.)  Our review is limited, however, to issues that were adequately raised and legally and factually supported in the appellant's opening brief.  (*Meeks v. Autozone, Inc.* (2018) 24 Cal.App.5th 855, 879 (*Meeks*).)

With these standards in mind, we proceed to consider Lee's claims.

II

*Hostile Work Environment*

To establish a hostile work environment sexual harassment claim, the plaintiff must show unwelcome conduct because of sex or gender that was "sufficiently severe or pervasive to alter the conditions of [his or] her employment and create an abusive work environment."  (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 277, 279 (*Lyle*).)  The

harassment " 'must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' " (*Id*. at p. 284.) " ' "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' " (*Id*. at p. 283.)

A. *Same-Sex Discrimination*

A plaintiff can demonstrate same-sex harassing behavior by showing "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace" or by showing harassment "in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility" to men.[3] (*Oncale v. Sundowner Offshore Services, Inc*. (1998) 523 U.S. 75, 80–81 (*Oncale*).) Lee alleges that he was harassed based on his gender because Hagey said he would not hit a woman on the buttocks and Soriano, while not tolerating profane or offensive language at any time, seemed more sensitive to the use of such language around women. To the extent Lee has shown different treatment of women and men in the work place, he has not shown that the disparate treatment resulted in terms and conditions of his work that were more adverse to men

_____

[3]    We agree with Lee that sexual desire is not a necessary element of gender discrimination. (§ 12940, subd. (j)(4)(C) ["Sexually harassing conduct need not be motivated by sexual desire."].)

6

than the terms and conditions for women.[4]  (*Oncale*, at p. 81; *Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 203 (*Kelley*).)

Workplace harassment is not automatically " 'discrimination because of sex merely because the words used have sexual content or connotations.  "The critical issue[ ] . . . is whether members of one sex are exposed to *disadvantageous terms or conditions of employment* to which members of the other sex are not exposed." '  [Citations.]" (*Kelley, supra*, 196 Cal.App.4th at p. 204, emphasis added; *Oncale, supra*, 523 U.S. at p. 80.)  "What matters . . . is not whether the two sexes are treated *differently* in the workplace, but whether one of the sex is treated *adversely* to the other sex in the workplace because of their sex." (*Kelley*, at p. 207; *Oncale*, at p. 80; *Lyle, supra*, 38 Cal.4th at pp. 279–280.)

Even if Lee has shown that coarse and vulgar language was used around men more than around women, and that Hagey would not hit a woman's buttocks with a clipboard, he has not shown that the conduct and vulgar language created disadvantageous terms and conditions for men to which women were not exposed.  (*Oncale, supra*, 523 U.S. at p. 80 [language with sexual connotations insufficient to show workplace harassment]; *Lyle, supra*, 38 Cal.4th at p. 282 [sexually coarse, offensive or vulgar language insufficient for hostile workplace harassment].)  Treating women more politely than men is not an adverse employment action.  "[G]enuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex" do not create actionable discrimination.  (*Oncale*, at p. 81.)

---

[4]     Lee's complaints that Hagey deprived him of overtime and did not give him his preferred duties relate to Hagey's alleged retaliation against Lee, discussed *post*.  These acts were not based on sex or gender and did not involve disparate treatment based on gender.

7

B. *Severe or Pervasive Harassment*

"To prevail on a hostile work environment claim . . . , an employee must show that the harassing conduct was 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex.' [Citations.]" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1043 (*Hughes*); *Lyle, supra*, 38 Cal.4th at p. 283.) "Taken into account must be the surrounding circumstances, such as the ' " 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " ' [Citation.] Thus, ' "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes' " ' in employment conditions. [Citation.]" (*Hughes*, at p. 1042; *Lyle*, at p. 283.) Sporadic and isolated actions do not state a claim for harassment. Harassment requires a "concerted pattern . . . of a repeated, routine, or a generalized nature." (*Lyle*, at p. 283.)

The behavior, moreover, must be objectively as well as subjectively perceived as harassment. (*Lyle, supra*, 38 Cal.4th at p. 284.) The plaintiff must show that a reasonable employee would have perceived the conduct and comments as materially altering the terms and conditions of employment or as seriously affecting the psychological well-being of reasonable employee. (*Hughes, supra*, 46 Cal.4th at p. 1043; *Lyle*, at p. 284; *Singleton v. United States Gypsum Company* (2006) 140 Cal.App.4th 1547, 1557 (*Singleton*) [psychological well-being].)

When there has been no loss of tangible job benefits, the plaintiff must make a " ' "commensurately higher showing that the sexually harassing

8

conduct was pervasive and destructive of the working environment." ' " (*Lyle*, at p. 285.)

Lee has suffered no loss of tangible job benefits. He continues to work at YRC with the same duties. He was not demoted; his pay has not been reduced; he was not subject to discipline for his complaint about Hagey. He has no plans to leave. Nonetheless, Lee states that the unwanted touching and the subsequent comments by his coworkers have unreasonably interfered with his work performance because he now experiences anxiety when bending over for a pallet while working on the dock. His reaction does not reflect a material change in the conditions of his employment. Acts that "do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable. . . ." (*Yanowitz v. L'Oréal USA, Inc.* (2005) 36 Cal.4th 1028, 1054 (*Yanowitz*).) A reasonable person would not perceive the conduct as severe or pervasive harassment. (*Lyle*, *supra*, 38 Cal.4th at p. 283 ["annoying or 'merely offensive' comments in the workplace are not actionable"]; *Hughes*, *supra*, 46 Cal.4th at pp. 1042–1043 [simple teasing not sufficient for harassment].)

Comments made by men to men with sexual connotations have been found to create a hostile work environment when the conduct as a whole was far more severe and pervasive than here. (See *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228; *Singleton*, *supra*, 140 Cal.App.4th 1547.) In *Taylor*, evidence supported a jury finding of severe and pervasive harassment when supervisors used epithets and slurs about plaintiff's sexuality several times each day, urinated on the plaintiff, made comments about ejaculating on him, and attempted or simulated masturbation around him. (*Taylor*, at pp. 1234–1235 [facts], 1238–1240 [ruling].) Similarly, a

triable issue of fact of severe and pervasive harassment was found when coworkers made sexually explicit comments and gestures of the plaintiff—a heterosexual man—committing acts of homosexual sex, and having such acts committed on him, "continuously, night after night." (*Singleton*, at p. 1553.) The conduct and comments here were not similarly pervasive or severe.

Lee has alleged vulgar and offensive conduct that was sporadic, not severe, and not physically threatening. Lee compares his working conditions here to the conditions in *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 38, where harassing comments were found pervasive. In *Caldera*, the plaintiff's supervisor mocked or mimicked plaintiff, who stuttered, in front of other employees, including once over the prison's radio system broadcast to 50 employees, once in earshot of about 24 employees, and again at a supervisors' training session. Senior officers testified that mocking an employee was pervasive and reflected the culture of the prison's employees. (*Id.* at p. 35–36, 40.) The comments here were far less pervasive than in *Caldera*.

Lee has not produced evidence of a triable issue that he was severely or pervasively harassed *because of his gender*. The unwanted touching and comments were offensive, but no reasonable person would find that they materially altered the conditions of his employment, created a work environment that qualified as hostile or abusive *due to his gender*, or unreasonably interfered with his work performance or psychological well-being. (See *Hughes*, *supra*, 46 Cal.4th at p. 1043; *Lyle*, *supra*, 38 Cal.4th at p. 283; *Singleton*, *supra*, 140 Cal.App.4th at p. 1557.)

## III

### *Quid Pro Quo Sexual Harassment*

Lee contends he stated a cause of action for quid pro quo sexual harassment because YRC impliedly conditioned his continued employment on Lee's acceptance of sexually charged conduct and comments from his supervisor and coworkers.

"A complainant establishes a case of quid pro quo sexual harassment by showing that a supervisor 'explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct.' " (*Holly D. v. California Institute of Technology* (9th Cir. 2003) 339 F.3d 1158, 1170, fn. 15 (*Holly D.*); see also *Hughes*, *supra*, 46 Cal.4th at p. 1042 [quid pro quo is based on "a demand for sexual favors in return for a job benefit"]; *Mogilefsky v. Superior Court* (1993) 20 Cal.App.4th 1409, 1414 (*Mogilefsky*) [quid pro quo may be alleged "where a term of employment is conditioned upon submission to unwelcome sexual advances"].) Quid pro quo harassment is necessarily limited to actions by a supervisor with the ability to confer or withdraw an employment benefit or detriment. (*Holly D.*, at p. 1170.) A reasonable person would have to believe that the plaintiff's job depended on complying with the supervisor's demands. (*Id.* at p. 1173.)

Lee's employment was not conditioned on acceptance of Hagey's touching of him. After Lee reported Hagey's actions, Hagey was disciplined, he did not touch Lee again, and Lee continued his employment at YRC without demotion or other adverse employment action.

Lee contends that YRC required him to accept his coworkers' statements as a condition of employment. However, he did not report the

comments to the human resources department. There is a factual dispute whether Lee told Meade about the comments or not, which we must resolve in Lee's favor. Meade said he would address such issues if he heard about them, however, and there is no evidence that an employee continued such comments after being told to stop. When another supervisor, Paul, heard one of the comments, he immediately told the coworker not to make such comments. Lee has not shown that YRC would have required Lee to accept "sexually charged conduct and comments" had he formally complained about the comments when they occurred, because his prior complaint about Hagey was investigated and the unwelcome conduct stopped.

IV

*Sex Discrimination — Disparate Treatment*

To prove disparate treatment caused by sex discrimination, Lee was required to show that he was subjected to an adverse employment action, and that his gender was a substantial motivating cause for the adverse action. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357 (*Guz*).) Lee has not shown or otherwise produced evidence that he was subjected to any adverse employment condition on the basis of his gender, as shown above. (See section II.A., *ante*.)

V

*Retaliation*

To show retaliation, the employee must show that he engaged in protected activity, the employer took an adverse employment action against the employee, and there is a causal link between the adverse action and the retaliatory motive. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) The protected activity must be a substantial motivating factor for the retaliatory acts. (*Ibid*.)

12

Lee states that Hagey retaliated against him, after he filed a grievance about getting hit with the clipboard, because he denied Lee overtime and assigned him to work on the loading docks instead of driving a truck. Lee further claims he had to file grievances to obtain his benefits of overtime and truck work, which forced him to endure ongoing comments from coworkers and caused him to adjust his work movement of bending over.

We conclude Lee has not met his burden of showing a substantial adverse change in compensation or in terms, conditions or privileges of employment in retaliation for his reporting of Hagey's unwanted touching. (*Yanowitz, supra*, 36 Cal.4th at p. 1054 ["[m]inor or relatively trivial actions or conduct by employers and fellow employees" not adverse employment action]; *Meeks, supra*, 24 Cal.App.5th at p. 879 [no tangible change in employment conditions].); *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 318 [manipulation of schedule that reduced plaintiff's pay not an adverse action].) " ' "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." [Citation.] " ' "[W]orkplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." ' " ' " (*St. Myers*, at p. 318.) " 'A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient' " to demonstrate an adverse employment action. (*Ibid.*)

In light of the above considerations, we conclude Lee has not raised a triable issue of fact with respect to retaliation.

## VI

*Failure to Prevent Harassment, Discrimination, and Retaliation*

"An employer is liable for harassment by a nonsupervisory employee, as well as by a nonemployee, if the employer knew or should have known of the harassing conduct and failed to take immediate and appropriate corrective actions. [Citation.]" (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1313, fn. 7.) Because we conclude Lee has not shown a triable issue of fact that he was harassed, discriminated against or retaliated against, he cannot show that YRC failed to prevent those actions. Lee cannot recover for failure to take steps to prevent discrimination or harassment because no discrimination or harassment occurred. (See *id.* at p. 1314.)

## VII

*Intentional Infliction of Emotional Distress*

The elements of intentional infliction of emotional distress include extreme and outrageous conduct by the defendant and severe or extreme emotional distress for the plaintiff. (*Hughes*, *supra*, 46 Cal.4th at pp. 1050–1051.) Defendants' actions were not severe or pervasive, much less outrageous. Lee's allegation that he suffered anxiety, stress, worry and sleeplessness did not describe severe or extreme distress. (*Hughes*, *supra*, 46 Cal.4th at p. 1051 ["discomfort, worry, anxiety, upset stomach, concern, and agitation" were not severe or enduring]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1377 [lost sleep, stomach upset, and generalized anxiety not severe or enduring].)

14

## VIII

### *Punitive Damages*

Punitive damages may be awarded " 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.' [Citation.] 'Malice' is defined as intentional injury or 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.' [Citation.] 'Oppression' is defined as 'despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.' [Citation.]" (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 712, quoting Civ. Code, § 3294.) We conclude facts supporting the existence of oppression, fraud or malice have not been shown.

## DISPOSITION

The judgment is affirmed. Costs to be awarded to defendants.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.


15