Filed 12/23/15  Segovia v. Canoga Perkins Corp. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANA SEGOVIA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CANOGA PERKINS CORPORATION et al., <br><br> Defendants and Respondents. | B258803 <br><br> (Los Angeles County <br> Super. Ct. No. BC495080) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Gregory W. Alarcon, Judge.  Affirmed.

Gary Rand & Suzanne E. Rand-Lewis and Suzanne E. Rand-Lewis for Plaintiff and Appellant.

Appleton Law Group and Heather Appleton for Defendants and Respondents.

_____

## SUMMARY

Plaintiff Ana Segovia sued her former employer, Canoga Perkins Corporation, and two of its employees, Elsa Aguilera and Thanh Truong, alleging causes of action for breach of contract, wrongful termination and intentional infliction of emotional distress, among others. Defendants filed a motion for summary judgment, to which plaintiff did not respond. The trial court granted summary judgment, and plaintiff appealed. She contends that defendants' moving papers did not establish a prima facie showing they were entitled to summary judgment. We conclude otherwise, and affirm the judgment.

## FACTS

### 1.    The Complaint

Plaintiff's complaint contained the following allegations. Plaintiff was hired by defendant Canoga Perkins Corporation, a manufacturer, in November 2005 as a "touch up operator." She was sexually harassed by her direct superior, defendant Thanh Truong, who "repeatedly advised Plaintiff and other female employees that he would bring in photographs of women's genitalia to show them, and made other overtly sexual comments and gestures." Defendant Truong created a hostile work environment through constant yelling and screaming at plaintiff and other employees, causing them to break down and cry. Defendant Truong was having an affair with another employee, and his wife (who also worked for Canoga Perkins) and lover would fight in the workplace. Defendant Truong favored his lover over other employees and blamed plaintiff for his lover's mistakes, creating a hostile work environment.

In July 2007, plaintiff lodged a complaint with her employer against defendant Truong. On July 16, 2007, defendant Elsa Aguilera, the human resources manager, wrote plaintiff stating the employer was looking into her complaint and defendant Truong "had been counseled to avoid further harassing behavior or conduct." Despite complaints from plaintiff and other employees, Canoga Perkins refused to take action against defendant Truong. The sexual harassment and hostile work environment continued.

On October 8, 2009, plaintiff sustained injuries to her head, right arm, back, shoulder, waist and elbow when the chair in which she was sitting broke. She filed for

workers compensation that same day. She took leave for two days, returned to work for three days, and then took a leave of absence.

On July 22, 2010, plaintiff's doctor examined plaintiff and reported injuries to her knee and ankle. The complaint alleged, "Defendant did not evaluate Plaintiff's status; did not evaluate her disability through an interactive process, perceived Plaintiff as disabled and refused to accommodate her, although reasonable accommodation was available."

On November 10, 2010, defendant Aguilera notified plaintiff that her employment would terminate as of November 12, 2010. Plaintiff alleged she was "informed and believes this was in retaliation for her prior complaints and injury."

After her termination, on December 16, 2010, plaintiff was again examined by her doctor, who placed her "under further work restrictions with the ability to do limited work."

On May 26, 2011, plaintiff advised defendants that "the agreed-upon workers compensation doctor indicated Plaintiff could return to work." She "was capable of resuming her employment and performing her job duties," and "asked for accommodation for any other job."

Plaintiff's complaint then described her injuries, and alleged defendants did not inform her she was entitled to workers compensation benefits, or to receive time off as needed to alleviate her work-related problems. She sought treatment from her primary physician for work-related stress using the medical insurance provided by Canoga Perkins.

Plaintiff alleged she and defendant Canoga Perkins entered into oral employment contracts in 2004, in which Canoga Perkins promised plaintiff would not be terminated except for good cause. She further alleged defendant terminated her employment "based upon her age, sex, medical disabilities and/or perceived disabilities and in retaliation for her protesting mistreatment."

Based on the allegations just described, plaintiff asserted causes of action for breach of express and implied contract, breach of the covenant of good faith and fair

3

dealing, wrongful termination in violation of public policy, intentional infliction of emotional distress, and unfair business practices under Business and Professions Code section 17200. (Plaintiff also alleged several other causes of action, asserting violations of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), and claims of fraud. The trial court sustained defendants' demurrers to those causes of action with leave to amend. Plaintiff did not amend her complaint and does not challenge those rulings on appeal.)

**2.    Defendants' Motion for Summary Judgment**

Defendants moved for summary judgment or, in the alternative, summary adjudication of issues.

### a.    The breach of contract and breach of covenant claims

Defendants asserted plaintiff was an "at will" employee; could not prove she had an implied contract with her employer that she would not be terminated absent good cause; and for the same reasons could not prove a breach of the covenant of good faith and fair dealing. Defendants relied on the following undisputed facts.

Plaintiff's November 2005 employment application stated she understood her employment "may be terminated by either Canoga or myself at any time, with or without cause or notice." (Her application also stated her understanding that only the president of the company had the authority to enter into any contrary agreement, and any such agreement had to be in writing signed by the president.) A similar provision on the at-will nature of plaintiff's employment appeared in the nondisclosure agreement plaintiff signed, as well as in her acknowledgement of receipt of the employee handbook and in the handbook itself. Plaintiff never entered into a written agreement altering the at-will nature of her employment.

### b.    Wrongful termination in violation of public policy

Defendants asserted plaintiff could not establish a nexus between her age, her gender, or her "medical and/or perceived disabilities" and her termination; could not establish that termination of her at-will employment was unlawful or violated any public policy; and could not establish that Canoga Perkins's legitimate business reason for

4

terminating her employment was a pretext for discrimination. Defendants relied on the following undisputed facts.

Plaintiff, who was born October 14, 1963, was more than 40 years old when she was hired in November 2005, and "has no facts to support her contention that she was terminated because of her age." Similarly, plaintiff "has no facts to support her contention that she was terminated because of her gender," or that she was terminated because of her "medical and/or perceived disabilities." As to this last claim, defendants pointed to these additional facts:

First, the essential duties of her job included these tasks: "[c]rimps, stakes, screws, bolts, rivets, welds, solders, cements, press fits, or performs similar operations to join or secure parts in place."

Second, on October 21, 2009, within a few weeks of her injury, defendant Truong, her direct supervisor, sent an email to Human Resources "indicating that [plaintiff] had told him she could not do her job because it hurt her hand too much to do the soldering and cutting." In the email, defendant Truong stated he did not have any positions available which did not require cutting. After receiving that email message, defendant Aguilera met with plaintiff, who told her she (plaintiff) could not continue to do her work because soldering made her wrist hurt too much.

Third, defendant received a number of "Disability Status & Authorization Request" forms from plaintiff's doctor, Edwin Haronian. On October 23, 2009, Dr. Haronian stated plaintiff's restrictions limited her to lifting no more than five pounds, and to walking and standing for no longer than 60 minutes. Canoga Perkins returned the form to Dr. Haronian, indicating that it could accommodate those restrictions.

On November 30, 2009, the form from Dr. Haronian stated that plaintiff was to "[a]void pinching and gripping." Subsequent forms from Dr. Haronian, issued in January, February, March, April and June 2010, contained the same or similar restrictions "from repetitive pinching and grasping," and stated that plaintiff was to "remain on [Temporary Total Disability]" if the employer could not accommodate the restrictions.

5

Disability status forms in July and August 2010 stated plaintiff was on "Temporary Total Disability" for four and six weeks respectively.

Fourth, because of plaintiff's inability to return to her job for a period exceeding one year, "pursuant to [Canoga Perkins's] policy," the company terminated plaintiff's employment effective November 12, 2010. After plaintiff's termination, Dr. Haronian continued to send Canoga Perkins disability status forms. On November 18, 2010, the form stated plaintiff could do "[n]o pinching and grasping."

Fifth, a declaration from defendant Aguilera stated that, from the time plaintiff went out on leave in October 2009 until her termination in November 2010, there were no open and available positions for which she was qualified, and nobody was hired to fill her job.

Sixth, defendants also asserted that, when plaintiff was terminated, she was not a "qualified individual" with a disability. As a result of her work-related injury, plaintiff was unable to continue performing her regular job duties. She did not begin looking for a job until March 2011, and did not seek to return to Canoga Perkins until May 2011.

c.      **Intentional infliction of emotional distress**

Defendants' motion asserted plaintiff could not establish that any of defendants subjected her to extreme and outrageous conduct, or that she suffered severe emotional distress. The motion also contended plaintiff's claim for intentional infliction of emotional distress was barred by the exclusivity provisions of workers compensation law. Defendants relied on these undisputed facts:

At her deposition, plaintiff testified defendant Truong bothered her a lot, yelled at her, and "was there with an attitude"; "put the rest of the people against [her]"; told her coworkers not to lend her tools and "not to get along well with [her]"; trembled with anger and "would snap his fingers"; and got "really close to me for me to fix things, and I was really nervous." In addition, defendant Truong's conduct, not directed at plaintiff, included that he would "make holes in the cardboard, and he would stick his finger in it"; he pulled on a man's pants; he danced; he used the word "conchita" to one of plaintiff's coworkers; and he fought with his wife. Plaintiff testified that defendant Aguilera "didn't

6

give me my job back"; discriminated against her because of her age, her disability and her complaints about defendant Truong; and "laid me off."

Plaintiff suffered nervousness, anxiety, headaches and nightmares during her employment, and attributed these conditions "to the way her supervisor [defendant] Truong treated her." The only psychological treatment plaintiff received relating to her employment was with psychologist Jorge Gomez, in connection with plaintiff's workers compensation case. No health care provider has told plaintiff that she requires future or additional treatment for the emotional distress plaintiff attributes to her termination. Plaintiff has not taken any prescription or over-the-counter medication in connection with her emotional distress.

### d.    The unfair competition law

Defendants' motion asserted plaintiff could not establish a statutory violation under Business and Professions Code section 17200, as all the claims in her complaint are common law claims.

## 3.    The Trial Court's Ruling

As indicated above, plaintiff filed no opposition to defendants' motion for summary judgment. Nor did plaintiff's counsel appear at the hearing on the motion. The court concluded that the proof cited in defendants' separate statement "suffice[d] to shift the burden of proof as to the elements of each of Plaintiff's causes of action, such as whether there was termination based on age, gender or disabilities, but no opposition was filed in order to evidence any triable issue of material fact."

The court granted defendants' motion, judgment was entered, and this appeal followed.

### DISCUSSION

The trial court correctly concluded that defendants produced evidence sufficient to shift the burden of producing evidence creating a triable issue of material fact to plaintiff. Because plaintiff failed to produce such evidence, summary judgment against her was proper.

7

## 1. The Applicable Legal Principles

We review an order granting summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)

In this case, where plaintiff has filed no opposing evidence, we must determine whether defendants "carried their initial burden of production to make a prima facie showing" that one or more elements of plaintiffs' causes of action cannot be established (or that there is a complete defense to the cause of action). (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861; *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 416 (*Kojababian*) [" 'While subdivision (b) of [Code of Civil Procedure] section 437c allows the court, in its discretion, to grant summary judgment if the opposing party fails to file a proper separate statement, this provision does not authorize doing so without first determining that the moving party has met its initial burden of proof.' "].)

## 2. This Case

We have recited the evidence at some length, and will not repeat it except as necessary. For each cause of action, defendants made a prima facie showing that plaintiff could not prove one or more elements of her causes of action.

8

First, plaintiff cannot establish a breach of contract, because the evidence showed plaintiff was an at-will employee and there was no contract of employment. Plaintiff produced no evidence to the contrary. For the same reasons, plaintiff cannot establish a breach of the covenant of good faith and fair dealing that inheres in every contract. On appeal, plaintiff presents no argument challenging this conclusion.

Second, plaintiff cannot establish intentional infliction of emotional distress. That cause of action requires, among other things, extreme and outrageous conduct causing the plaintiff to suffer severe or extreme emotional distress. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.) "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' " (*Id.* at pp. 1050-1051.) Liability " ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [Citation.]' " (*Id.* at p. 1051.) The evidence defendants presented showed no extreme or outrageous conduct (and no severe or extreme emotional distress)**,** and plaintiff produced no evidence to the contrary. On appeal, plaintiff presents no argument challenging this conclusion.

Third, plaintiff's complaint alleged an unfair competition claim, asserting only that defendants' conduct as alleged in connection with her other claims constituted unfair business practices. In response to defendants' assertion that plaintiff cannot establish a violation of Business and Professions Code section 17200, and its citation to her complaint, plaintiff proffered no evidence. Because summary judgment on her other claims is proper (see also *post*), there is no basis for reaching a different conclusion on her derivative unfair business practices claim. On appeal, plaintiff again presents no argument challenging this conclusion.

That brings us to plaintiff's claim she was terminated in violation of the state's fundamental public policies as reflected in its laws prohibiting discrimination on the basis of age, gender, and disabilities or perceived disabilities. Plaintiff offers no argument and cites no evidence to suggest that summary judgment was improper on her age and gender claims. She does, however, contend that the facts defendants presented, concerning her

claim of wrongful termination based on her disabilities, "actually support [plaintiff's] claims, [and] establish disputed issues of triable fact . . . ." Plaintiff is mistaken.

Defendant's evidence showed that plaintiff was terminated in accordance with Canoga Perkins's policy of terminating employees who are unable to return to their jobs for more than a year. Specifically, a declaration from defendant Aguilera stated that she was the Human Resources Manager for Canoga Perkins, had personal knowledge of the material facts in her declaration, and that: "Due to her inability to return to her job for a period exceeding 1 year, pursuant to [Canoga Perkins]'s policy, on November 10, 2010, I sent a letter to [plaintiff] advising her that her employment was terminated effective November 12, 2010 . . . ."

Defendants presented evidence of plaintiff's workplace injury, including disability status forms prepared throughout the year (and after her termination) by plaintiff's personal physician, to the effect she was restricted from "pinching and grasping" and was temporarily totally disabled unless the employer could accommodate that and other restrictions. Defendants also presented evidence that the essential duties of plaintiff's job as a solderer required pinching and grasping, so that the company could not accommodate plaintiff's restrictions. Further, defendant Aguilera's declaration stated that while plaintiff was on leave, there were no open and available positions for which she was qualified. This evidence constituted a prima facie showing that plaintiff's termination did not violate any public policy of the state, and plaintiff produced no evidence controverting defendant's evidence.

Nonetheless, plaintiff insists defendant's own evidence established issues of triable fact, and showed "that [defendants] refused to accommodate [plaintiff], despite her being capable of returning to work with accommodations." While plaintiff does not trouble to describe the evidence on which she relies, the cited evidence does not assist plaintiff.

Plaintiff cites her deposition testimony about other jobs she could have done, as follows:

"Q     What job did [defendant Truong] have that you could have done?

10

"A      Assemble, preparing parts, other things.  Different – he has different things. Inspect; I could have been doing that.  I would have liked to be placed there."

And:

"Q      When you told Mr. Truong that you wanted to switch to another job, you gave me three examples; three jobs that you said you could do:  Assembler, preparing parts, and inspection.  [¶]  Are those three different jobs?

"A      Yes."

And:

"Q      You also said you could have done the job doing inspections; right?

"A      Yes.

"Q      Tell me about what that job requires.

"A      Inspecting with a microscope.

"Q      Inspecting what?

"A      The boards, the parts."

Plaintiff contends the above testimony "established that there were other positions that [plaintiff] could have filled, had [defendants] accommodated her medical condition/disability," thus creating a disputed issue of fact, so that the burden of producing evidence never shifted to her.

Plaintiff fails to describe the whole of her testimony, specifically, her repeated admissions that she did not know if there were any open, available positions at any time between her injury and her termination.  For example, plaintiff was asked, "Do you know if there were any open, available assembly positions at any time between the time you fell off your chair and the date of your termination?" and answered, "I don't know."  She was asked, "What jobs were open and available at the company that you could have performed?" and answered, "I don't know."  And she was asked, "At any point in time after you fell off the chair, was there ever an open and available position that you could have performed?" and answered, "I don't know."  Plaintiff also testified she never saw any advertisement for a position she was qualified to perform after her injury.

11

In short, the only evidence on the point was an email from defendant Truong a few weeks after plaintiff's injury, telling the Human Resources Department that he did not have any positions available which did not require cutting, and defendant Aguilera's declaration that during the entire period between plaintiff's injury and her termination, there were no open and available positions for which she was qualified. Plaintiff offered no controverting evidence.

Next, plaintiff cites several of the disability forms her physician prepared, showing she was restricted from "pinching and gripping" and should remain on temporary total disability if the employer could not accommodate her work restrictions. These forms were then signed by defendant Aguilera, stating the employer could not accept the restrictions. Contrary to plaintiff's apparent belief, this evidence does not raise any disputed issue; she produced no evidence she could do her job without pinching and gripping, and no evidence suggesting defendant had other jobs available that did not require pinching and gripping.

Finally, plaintiff contends that it was improper to rely on defendant Aguilera's "self-serving," "inadequate and conclusory" declaration of the employer's "purported 'policy' which they relied upon to terminate [plaintiff's] employment," and complains that defendant Aguilera "was the sole witness to that 'fact.' " We see no error.

Plaintiff relies on Code of Civil Procedure section 437c, subdivision (e) of the summary judgment statute. That provision tells us that summary judgment may be denied "in the discretion of the court, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact . . . ." (§ 437c, subd. (e).) Plaintiff overlooks the pertinent point: this is a matter of the trial court's discretion. (*Ibid.*; see also *Kojababian, supra,* 174 Cal.App.4th at p. 417 ["[b]ecause plaintiff did not controvert defendants' declarations . . . , the trial court properly accepted them as true"; although there is "an exception to that rule when the declarant is the sole witness to a fact or testifies as to his or her state of mind, the trial court retains discretion to grant the motion based on such declarations"].)

12

In sum, defendants presented a prima facie case showing they were entitled to summary judgment on all plaintiff's causes of action, and plaintiff produced no controverting evidence. Summary judgment was appropriate.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.


GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.


FLIER, J.