Filed 12/29/20  Dai v. American Curvet Investment CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| PING DAI, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AMERICAN CURVET INVESTMENT, LLC et al., <br><br> Defendants and Appellants. | B290504 <br><br> (Los Angeles County Super. Ct. No. BC620154) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Law Offices of Ray Hsu & Associates and Ray Hsu for Defendants and Appellants.

Jong Lee for Plaintiff and Respondent.

A trial jury found defendants and appellants American Curvet Investment, LLC, Keda Woollen Textile Fabric Distribution Co., LTC, and Qi Wang (defendants) liable to plaintiff and respondent Ping Dai (Dai) on hostile work environment, failure to prevent harassment, and wrongful constructive discharge causes of action. Defendants appeal the trial court's denial of their post-trial motion for judgment notwithstanding the verdict, which chiefly argued insufficient evidence supported the jury's hostile work environment verdict. We are asked to decide whether substantial record evidence establishes Dai experienced severe and pervasive harassment and whether this harassment, by defendant Wang who was Dai's supervisor at the hotel where she worked, is sufficiently connected to her employment.

## I. BACKGROUND

During the time of the sex harassment conduct found by the jury (September 2014 to October 2015), Dai was employed at the LA Crystal Hotel in Compton (the Hotel). Defendant Wang was her supervisor and, through corporate entities, the owner of the Hotel. Dai lived at the Hotel and she was expected to be "on call" to handle issues that arose outside her normal working hours. Defendant Wang also maintained a room at the Hotel for his use as living quarters.

*A.    Dai's Trial Testimony*

At trial on her complaint asserting employment discrimination and Labor Code causes of action,[1] Dai testified Wang sexually harassed her on multiple occasions during her employment, with some of this harassment including unwanted physical touching.  Three of the sex harassment episodes Dai described occurred within the first six months of her employment at the Hotel and the fourth, an occasion on which Wang attempted to force himself on Dai on a couch at the Hotel, occurred in August 2015 shortly before Dai resigned—citing "unfair and wrongful treatment at work, which has even threatened [her] personal safety."

The first episode of harassment Dai described occurred at about 10:00 p.m. one evening in November 2014.  Dai was in her room at the Hotel, and Wang sent her a text message stating he could "bring over a big banana."  Dai testified she was "shocked" by the message and did not respond.

The next incident Dai described again took place late one evening in February 2015.  Wang sent Dai a text message asking if he could come to her room to share some food he received from China.  Dai agreed.  Once Wang was inside Dai's room, he "held [her] forcefully" and attempted to kiss her.  Dai testified she smelled alcohol on his breath and that she "struggled and pushed

---

[1]    Dai's operative complaint alleged causes of action for quid pro quo and hostile work environment sex harassment, sex discrimination, retaliation, failure to prevent harassment, wrongful constructive discharge, battery, and sexual battery. The complaint also alleged several Labor Code claims related to unpaid wages and expenses, plus an unfair competition claim.

3

him away" before backing into a corner. Dai said she felt "embarrassed and very uncomfortable," and since Wang was her boss, she wanted to get the incident "over quickly." She told Wang she was tired and asked him to leave, which he did. According to Dai, this incident put her "on guard" and made her a bit afraid of Wang.

The next month, March 2015, Dai was alone in her office at her desk when Wang entered and began praising her work. He then wrote out a check to Dai, telling her he was compensating her for deductions in her salary that had been taken after her recent vacation. Wang handed the check to Dai, and when he did, he moved in and kissed her on the cheek. Dai stood up, at which point Wang put his arm around her and tried to kiss her again. Dai pushed Wang away and asked him to leave, which he did. Dai said this incident left her "very, very humiliated."

Over the next several months, Wang and Dai continued to communicate by text message. In May 2015, when Wang was away in China, Dai was concerned about her job security so she sent Wang a text message that stated "We miss you," with the we" meaning her and her fellow employees at the Hotel. Wang's reply to the text message was: "It would be better [if] it's I, not we." Dai responded with two question marks and then wrote: "When one is at home the argument occurred, when one is not, the one will miss the other."[2] Wang later texted Dai that his wife had seen his text message to her (the "I, not we" message) and got upset. Dai offered to resign, thinking that might be what

---

[2]    The meaning of this is not entirely clear, but Dai testified the "other" in her text referred to the Hotel staff and the "home" was the Hotel.

Wang wanted her to do, but Wang did not accept the offer and told Dai his wife "would get over it." Later in July 2015, Dai sent Wang a text message that her shoulders "have become like noodles today" after working to clean the hotel bedrooms. Wang responded: "I should go and offer you a massage."

Dai described a fourth incident of harassment that occurred in August 2015. Dai entered the employee dining area at the Hotel for lunch and stubbed her toe. Wang, who was the only other person in the dining area at the time, told Dai he wanted to discuss a few things with her, and instructed Dai to follow him to a nearby room. Once inside, he "pulled [her] into" a sofa and said he wanted to check her toe. Dai said that wasn't necessary, but Wang lifted her leg up, causing her to fall back. Wang then pushed one of his legs between hers and lay on top of her. Dai began to struggle and told Wang to stop. Dai said Wang continued to "assert control" and did not respond. Dai then kicked both of her feet to attempt to get up and pushed at Wang with her hands before finally being able to stand and run from the room. Dai said she was "very emotional" as she ran away.

The next week, Wang texted Dai and scolded her for losing a receipt. Dai testified that was the first time she received "any scolding for such a long time at such a severe level." Wang also began ignoring Dai when he saw her at work. Dai engaged counsel and her attorney sent Wang a letter; after Wang received it he began to threaten her job and told Dai she would be investigated. Dai requested time off, which Wang denied. Her sales commission was rescinded and her expenses were no longer being reimbursed.

Dai resigned in October 2015. Her letter of resignation (as translated from Mandarin Chinese) stated: "Recently, I have

been getting picked on, defamed, insulted and other unfair and wrongful treatment at work, which has even threatened my personal safety. My body and mind have consequently got extremely harmed. Such work environment makes me unable to continue my regular work as usual."

### B. Wang's Trial Testimony

Wang denied ever attempting to kiss Dai or touch her inappropriately. He also denied having any "consensual private relationship" with Dai. Wang further denied—or said he didn't remember—the details of each harassing episode Dai described in her testimony. With regard to the August 2015 couch incident, Wang testified Dai injured her foot in the dining area, he offered to check on it, she refused, and they left the dining area together. He did not remember taking her to a side room and he denied touching Dai.

### C. The Verdict and Post-Trial Motions

The jury found in Dai's favor on her causes of action for hostile work environment, failure to prevent harassment, and wrongful discharge in violation of public policy; the jury awarded her $67,075 in damages on these claims. The jury also found for Dai on her Labor Code claims, awarding her $13,831.80. The jury found against Dai, however, on her battery, sexual battery, and quid pro quo sexual harassment claims.

After trial, defendants filed a motion for judgment notwithstanding the verdict, a motion to reduce the damages award, and a motion for a new trial on the ground that Dai had been awarded excessive damages. The trial court denied the motions. Defendants filed a motion for reconsideration of the

6

motion for judgment notwithstanding the verdict, which the court denied.  The trial court then awarded Dai $114,303.00 in attorney fees.

## II.  DISCUSSION

Under the governing substantial evidence standard of review, defendants' challenge to the denial of their motion for judgment notwithstanding the verdict fails.  They argue the evidence of harassment was insufficiently severe and pervasive, but the multiple instances of harassing behavior described by Dai—some involving serious nonconsensual physical touching— are more than sufficient to overcome the severe and pervasive threshold.  The episodes of harassment also bear the requisite connection to Dai's employment, with one occurring at the very moment she was being repaid for salary deductions and the others transpiring at the Hotel where she was, as she put it, "on call 24/7."  That the jury did not make other special verdict findings in Dai's favor on some of her other theories of liability does not undermine the sufficiency of the evidence for the hostile work environment claim.

### A.     *Standard of Review*

"On appeal from the denial of a motion for judgment notwithstanding the verdict, we determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict.  [Citations.]  If there is, we must affirm the denial of the motion." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.)  "'[W]e resolve "all conflicts in the evidence and all legitimate and reasonable inferences that may arise therefrom in favor of the jury's findings and the

7

verdict. [Citations.]" [Citation.] Thus, this court must accept as true the evidence supporting the verdict, disregard conflicting evidence, and indulge every legitimate inference to support the verdict."' (*Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1182.)

### B. Substantial Evidence Supports the Jury's Verdict on the Hostile Work Environment Claim

In order to prevail on a sex harassment hostile work environment claim, an employee "must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462 (*Miller*).) "To be actionable, 'a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' [Citation.]" (*Lyle v. Warner Bros. Television Prods.* (2006) 38 Cal.4th 264, 284.)

"In evaluating the totality of the circumstances to determine the existence of a hostile work environment, the following factors can be considered: "'(1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred. [Citation.]""" (*Brennan v. Townsend & O'Leary Enterprises, Inc.* (2011) 199 Cal.App.4th 1336, 1347-1348 (*Brennan*); see also *Miller, supra,*

8

36 Cal.4th at 462 ["'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.  Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive'"].)

        Defendants attempt to minimize the harassing incidents by characterizing them as "sporadic," "insignificant," "inappropriate," and "trivial."  But there was plenty of evidence at trial to the contrary, and it is that evidence we credit under the applicable standard of review.  For almost a year, Wang intermittently harassed Dai verbally and physically in multiple locations at the workplace—during the workday in her office, at lunch, when she was alone in her room, and over the phone while she was on call.  The incidents also escalated in severity and included the unwelcome physical touching that *Brennan* and other cases deem more highly offensive:  Wang went from attempting to kiss Dai and being pushed away in February 2015, to kissing her cheek and attempting another kiss in March 2015, to attempting to force himself on her on a sofa in August 2015.  Certainly in the aggregate, the episodes of sex harassment constitute conduct that a reasonable person in Dai's position would find severely hostile or abusive.  The cases cited by defendants where courts found insufficient evidence to support sexual harassment claims—*Hughes v. Pair* (2009) 46 Cal.4th 1035 (a single day of crude remarks and innuendo), *Haberman v. Cengage Learning, Inc.* (2009) 180 Cal.App.4th 365 (crude jokes

9

about other women and inappropriate remarks directed at an employee), and *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121 (boorish remark and innuendo, and two incidents of brief touching)—are poor factual comparators.

There is also adequate evidence Dai subjectively perceived her workplace as hostile and found Wang's conduct offensive. As we have already recounted, Dai testified that the harassment shocked and upset her, and the content of her resignation letter (making references to threats to her personal safety and unfair and wrongful treatment) is consistent with that testimony. The points defendants raise to argue the contrary—the "we miss you" text from Dai to Wang in China and the absence of an explicit reference to sexual harassment in her resignation letter—are unconvincing. Dai testified she sent the text message only because she was worried about her job security and trying to salvage a working relationship with Wang; the text message does not undermine her other testimony about the shock and humiliation she felt in response to Wang's harassment. As for the content of Dai's resignation letter, there is no legal or common sense reason why the letter needed to expressly accuse defendants of illegal sexual harassment—that is what civil complaints are for.

Defendants advance two counterarguments attacking the evidence supporting the hostile work environment verdict, but neither undermines our conclusion the evidence was sufficient. Defendants argue three of the harassing incidents (the "big banana" text, the visit to Dai's hotel room, and the lunch room episode) occurred while Dai was "off-duty" and are thus insufficiently connected to her employment, and they claim the instances of nonconsensual physical contact cannot be considered

10

in the sufficiency of the evidence calculus because the jury made other special verdict findings that indicate the jury must not have believed the nonconsensual physical contact occurred.[3]

Defendants' first argument (the argued insufficient nexus between the harassment and Dai's employment) ignores the circumstances of Dai's employment: she lived at the hotel and there was evidence she was always on call and would handle work issues at all hours of the day. Against this backdrop, all the harassing episodes are fairly said to have taken place at the workplace and during working hours.

The problem with defendants' second argument requires slightly greater elaboration. In response to a special verdict query pertaining to Dai's quid pro quo sexual harassment theory of liability, the jury answered "No" when asked whether "Wang ma[de] unwanted sexual advances to . . . Dai or engage[d] in unwanted verbal or physical conduct of a sexual nature." The jury also found against Dai on the battery and sexual battery causes of action, answering "no" to the question (for battery) asking if "Wang touch[ed] . . . Dai or cause[d] . . . Dai to be touched with the intent to harm or offend her?" and "no" to the question (for sexual battery) asking if Wang "intend[ed] to cause a harmful or offensive contact with . . . Dai's body, and a sexually offensive contact with . . . Dai resulted, either directly or

---

[3]    Defendants do not make the analytically distinct argument that the hostile work environment verdict must be reversed, regardless of the sufficiency of the evidence, because the jury's special verdict findings are internally inconsistent—the remedy for which would be a new trial, not judgment notwithstanding the verdict. (See generally *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 124.)

11

indirectly, or caused an imminent fear of a harmful or offensive contact with . . . Dai's bod[y], and a sexually offensive contact with . . . Dai resulted, either directly or indirectly."

The problem with defendants' reliance on these special verdict findings is the battery and sexual battery special verdict questions go to both the intent animating the conduct and the conduct itself. For battery, we cannot reliably infer the jury found Wang did not touch Dai or cause harmful or offensive contact to Dai because it is equally possible that the jury found Wang touched Dai with a different intent than to harm or offend. For sexual battery, the instruction given to the jury for that claim referred to specific body parts,[4] so again, we cannot infer the jury must not have found an offensive physical touching because the jury may have instead determined there was just no evidence as to whether Wang made contact with those specific areas of Dai's body. Likewise, the jury's quid pro quo theory special verdict

---

[4]     The jury was given the following instruction: "To establish this claim, . . . Dai must prove the following: [¶] 1. (a) That . . . Wang intended to cause a harmful or offensive contact with . . . Dai's genitals, breasts, or buttocks, and a sexually offensive contact with . . . Dai resulted, either directly or indirectly; [¶] OR [¶] 1. (b) That . . . Wang intended to cause a harmful or offensive contact with . . . Dai by use of . . . Wang's penis, and a sexually offensive contact with . . . Dai resulted, either directly or indirectly; [¶] OR [¶] 1. (c) That . . . Wang caused an imminent fear of a harmful or offensive contact with . . . Dai's genitals, breasts, or buttocks, by use of . . . Wang's penis, and a sexually offensive contact with . . . Dai resulted, either directly or indirectly; [¶] AND [¶] 2. That . . . Dai did not consent to the touching; and [¶] 3. That . . . Dai was harmed or offended by . . . Wang's conduct."

finding might have turned on the jury's understanding of the term "sexual," which does not foreclose the possibility the jury relied on the unwanted physical touching that Dai described in concluding she proved her hostile work environment claim.

    *C.    Defendant's Ancillary Claims Fail*

Defendants' challenges to the failure to prevent harassment and wrongful discharge in violation of public policy verdicts, as well as the trial court's denial of their motion for new trial and motion for reduction of damages, are predicated solely on the premise that the insufficiency of the hostile work environment evidence establishes the trial court's rulings were erroneous. We have held substantial evidence supports the jury's hostile work environment verdict, and we accordingly reject defendants' challenges to the other motion rulings. We likewise reject, for the same reason, defendant's challenge to the trial court's award of attorney fees to Dai.

DISPOSITION

The judgment is affirmed.  Dai shall recover her costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.


We concur:



RUBIN, P. J.



KIM, J.