Filed 11/30/22  Mesa v. CBC Cleaning and Restoration CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| LUIS MESA, JR., et al., | B312957 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV45950) |
| v. | |
| CBC CLEANING AND RESTORATION, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Affirmed.

Gary Rand & Suzanne E. Rand-Lewis Professional Law Corporations and Suzanne E. Rand-Lewis for Plaintiffs and Appellants.

Yukevich | Cavanaugh, James J. Yukevich, Todd A. Cavanaugh and Michael D. Johnson for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiffs and appellants Luis Mesa, Jr., Katherine Mesa, Luis Mesa, Sr., Garrett H. Mesa, Bailey S. Mesa, and Kendall T. Mesa, brought this action for damages arising from allegedly uninhabitable conditions in their leased home. The trial court granted judgment on the pleadings in favor of defendant and respondent CBC Cleaning and Restoration, Inc. (CBC). Plaintiffs contend on appeal the motion was untimely, all claims against CBC were adequately pled and, alternatively, if there were any pleading defects, the trial court abused its discretion by failing to grant plaintiffs leave to amend.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In September 2014, the Mesa family leased a two-story, single-family home in the Santa Clarita Valley from defendants Eric and Laura Monney. (The Monneys are not parties to this appeal.) Plaintiffs renewed the lease with the Monneys in 2016 and again in 2018.

After living in the house four years, plaintiffs first reported to the Monneys in December 2018 that the shower door in the upstairs master bathroom had broken and appeared to reveal a mold problem in the adjacent flooring and walls. A month later, when the Monneys' handyman still had not arrived to repair the problem, plaintiffs advised the Monneys the issue with the shower door seemed to be causing water to seep into the floor and the ceiling of the downstairs dining room.

Over the next five months, plaintiffs continued to have problems in the home, primarily related to the water intrusion that resulted in the growth of mold. Remediation efforts were undertaken by contractors hired by the Monneys, but in May

2

2019, when testing was performed that showed unhealthful levels of mold remained in the home, plaintiffs moved out.

In December 2019, plaintiffs filed this action alleging many problems and defects in the home that caused the premises to become uninhabitable.  Plaintiffs alleged they experienced extreme distress because of the unsafe and uninhabitable conditions in their home, were unable to use large portions of their home for extended periods due to demolition and repair work, and the whole family was exposed to mold, loud fans, noxious odors and construction debris.  Plaintiff Katherine Mesa was undergoing cancer treatments and had a weakened immune system and could not be exposed to mold or other environmental irritants without severely compromising her health.

The majority of plaintiffs' allegations of wrongdoing are focused on the Monneys, as the owner/landlords, and on plaintiffs' insurers.  Plaintiffs allege the Monneys were trying to constructively evict them by failing to make timely and adequate repairs.  Plaintiffs allege their insurers failed to provide them with the benefits to which they were entitled under their renters' insurance policy.

Plaintiffs also named three defendants identified as the "contractor" defendants who were involved in investigating and remediating the mold problem:  CBC, John Murray Plumbing and AEG Holdco LLC, doing business as American Environmental Group (AEG).  (John Murray Plumbing and AEG are not parties to this appeal.)

CBC was hired by the Monneys to remediate the mold.  On March 5, 2019, CBC came out to plaintiffs' home to perform an inspection and assess the situation.  On March 14, 2019, CBC returned to perform remediation work.  CBC removed drywall in

both the dining room and master bath, set up containment areas in both rooms and placed fans inside the containment areas to run continuously for 10 days. CBC did not remove drywall in the master bath all the way up to the ceiling despite the fact that the water leaks started at the "shower arm."

Thereafter, defendant AEG, also hired by the Monneys, took air samples in the containment areas constructed by CBC which came back as "unsatisfactory." CBC returned to plaintiffs' home to perform additional remediation work in both the master bath and the dining room. New air samples were taken by AEG and on March 27, 2019, the Monneys advised plaintiffs that the air samples were "satisfactory." Plaintiffs requested copies of all reports related to the remediation work and testing.

On April 16, 2019, CBC returned to plaintiffs' home to investigate a leak and mold discovered under the kitchen sink. Plaintiffs alleged that "Josh" from CBC told plaintiffs that CBC would need to return to remove additional drywall in the master bathroom and to construct a new containment area in the kitchen so that remediation work could be completed under the sink.

Plaintiffs hired their own testing company, MI&T Mold Testing Company (MI&T), to perform an inspection and testing throughout their home. MI&T subsequently reported to plaintiffs there were "elevated" and "unhealthful" levels of mold detected in the dining room, master bath, master bedroom and the air conditioning return in the loft. They recommended further remediation work throughout the home and that plaintiffs vacate the premises until that work could be completed.

CBC filed an answer to the original complaint and did not demurrer. AEG, one of the contractor defendants, filed a demurrer to the original complaint that was sustained with leave

to amend.  Plaintiffs then filed their operative 66-page first amended complaint.

In February 2021, after having answered the first amended complaint, CBC filed its motion for judgment on the pleadings arguing that none of the causes of action stated sufficient facts. The hearing on the motion was held March 9, 2021.  The trial court granted CBC's motion without leave to amend and entered a judgment of dismissal in its favor.

This appeal followed.

## DISCUSSION

### 1.    The Motion Was Timely

Plaintiffs argue the motion was untimely because it was filed after the initial case management conference (Nov. 18, 2020) at which the court set a trial date of November 29, 2021.  The argument is without merit.

Code of Civil Procedure section 438, subdivision (e) states a motion for judgment of the pleadings may not be made after "a pretrial conference order has been entered pursuant to Section 575, *or* within 30 days of the date the action is initially set for trial, *whichever is later*, unless the court otherwise permits."  (Italics added.)  Even assuming the court's November 2020 minute order from the initial case management conference qualified as a pretrial conference order, defendant's motion was timely filed in February 2021, more than eight months before the initial trial date.

### 2.    Standard of Review

Where, as here, the lower court has entered a judgment of dismissal after granting a motion for judgment on the pleadings without leave to amend, we apply the same de novo review that applies to demurrers.  (*Shimmon v. Franchise Tax Bd.* (2010) 189

Cal.App.4th 688, 692–693.) For the limited purpose of reviewing the propriety of the trial court's ruling, we treat the motion as admitting all well-pled material facts, but not contentions, deductions or conclusions of law or fact. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010 (*Centinela*).) In determining whether the operative complaint states a cause of action, " ' "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Ibid.*) When the motion has been granted, as here, without leave to amend, we determine whether there is a reasonable possibility the defect can be cured by amendment. (*Ibid.*) " ' "The burden of proving such reasonable possibility is squarely on the plaintiff." ' " (*Ibid.*)

Like a demurrer, the purpose of a motion for judgment on the pleadings is to test the legal sufficiency of the plaintiff's complaint in stating a cause of action. We therefore are not concerned with evidentiary matters or the plaintiff's ability to prove the allegations. (*Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1291.)

### 3. The Fraud Claims

It is well established that "[i]n California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] 'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " [Citation.] [¶] This particularity requirement necessitates pleading facts which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) Negligent misrepresentation and concealment are types of fraud (Civ. Code, § 1710) and therefore

6

must also be pled with specificity.  (See, e.g., *Reeder v. Specialized Loan Servicing LLC* (2020) 52 Cal.App.5th 795, 803–804 (*Reeder*); *Knox v. Dean* (2012) 205 Cal.App.4th 417, 433.)

Plaintiffs alleged three fraud claims against CBC as one of the collectively defined "contractor" defendants:  the sixth cause of action for fraud, the seventh cause of action for negligent misrepresentation and the eighth cause of action for concealment.  All three causes of action are based on the following core allegation:  that "[a]ll Defendants" falsely represented they would be investigating, testing and remediating the "water intrusion and mold issues" in plaintiffs' home without any intent to actually perform a complete and thorough job; and that they knew of the serious health issues present in the home, but concealed and refused to disclose to plaintiffs the extent of the serious health issues that required the Monneys to provide plaintiffs with alternate living arrangements.

The only specific allegations referencing CBC state that CBC employees performed mold remediation work in three areas of plaintiffs' home (master bath, dining room and kitchen) and that CBC failed to remove the drywall up to the ceiling in the master bathroom and had to return to do more remediation work.  All other allegations are made against all "contractor" defendants collectively.

These limited allegations fail to set forth, with the requisite specificity, the essential elements of any theory of fraud against CBC.  For instance, there are no allegations that CBC employees lacked the intent to perform the work properly.  To establish the requisite fraudulent intent, it is not sufficient " 'to show an unkept but honest promise, or mere subsequent failure of performance.' " (*Reeder*, *supra*, 52 Cal.App.5th at p. 804.)  The

allegations, as a matter of law, are insufficient to state a claim for fraud, concealment or negligent misrepresentation against CBC, and plaintiffs failed to identify any additional facts that could be pled to cure the defects.

**4.     Intentional Infliction of Emotional Distress**

A cause of action for intentional infliction of emotional distress requires the pleading of facts showing extreme and outrageous behavior intended to cause harm. "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.] And the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051.)

Here, the limited allegations pled against CBC do not include any acts that rise to the level of extreme and outrageous conduct. And, as with their theories of fraud, plaintiffs failed to offer any additional facts that might be pled to cure the defects.

**5.     The UCL and CRLA Claims**

Both of plaintiffs' statutory claims are also deficient as a matter of law.

Plaintiffs' 15th cause of action is premised on a violation of the Unfair Competition Act (UCL; Bus. & Prof. Code, § 17200 et seq.). Plaintiffs allege only that "defendants" acted "unreasonably" and "concealed" dangerous conditions in the home that exposed plaintiffs to dangerous mold and toxins. Plaintiffs argue the claim is valid because it is based on the same fraudulent conduct as their three fraud claims. As we have already explained *ante*, plaintiffs' fraud theories fail for lack of specificity. Plaintiffs have not alleged any fraudulent conduct by

8

CBC, and the section 17200 claim premised on alleged fraud fails for that reason.

Plaintiffs' 18th cause of action under the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.) fares no better. It too consists of minimal, conclusory allegations against "defendants." Plaintiffs allege that "defendants" held themselves out as experts in their respective fields and, through unspecified "unfair and deceptive practices," performed services for plaintiffs in their home that resulted in plaintiffs being exposed to mold and other unhealthful conditions. But, there are no allegations that CBC advertised or otherwise deceived plaintiffs into hiring them to remediate the mold (mold that CBC did nothing to cause). Indeed, plaintiffs allege the Monneys hired CBC, and there are no allegations plaintiffs hired or paid for any services by CBC under false pretenses or otherwise. Plaintiffs allege no other theory by which remedies under the CLRA would be available to them against CBC.

## 6. The Contract Claim

Plaintiffs' first cause of action for "breach of express and implied contract[s]" is stated against the Monneys and the "contractor" defendants. Plaintiffs contend all of the elements of breach of contract are pled and it was error for the court to resolve the claim as a matter of law because determining whether someone is a third party beneficiary is a factual question that should be resolved by the jury. We are not persuaded.

"[U]nder California's third party beneficiary doctrine, a third party—that is, an individual or entity that is not a party to a contract—may bring a breach of contract action against a party to a contract only if the third party establishes not only (1) that it is likely to benefit from the contract, but also (2) that a

motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 821; see also *Principal Mut. Life Ins. Co. v. Vars* (1998) 65 Cal.App.4th 1469, 1486 [third party may qualify as a contract beneficiary where the contracting parties intended to benefit that individual and that intent appears in the terms of the agreement].)

Plaintiffs' claim is based on a contract between plaintiffs and the Monneys. They allege that, pursuant to that contract, the Monneys were required to provide a habitable dwelling, that plaintiffs performed all of their obligations under the contract, and "defendants" breached the contract by failing to properly repair and remediate dangerous conditions in the home. The only reference to plaintiffs being third party beneficiaries is a single conclusory allegation that plaintiffs were third party beneficiaries of all the contracts between the Monneys and the "contractor" defendants. There are no other facts pled supporting plaintiffs' status as third party beneficiaries of any contract between the Monneys and CBC. There are no facts pled at all about the terms of the contract between the Monneys and CBC. Plaintiffs argue they are necessarily third party beneficiaries because they lived in a house with mold that the Monneys hired CBC to remediate.

However, the fact that a contract, "if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement. [Citation.] Whether a third party is an intended beneficiary or merely an incidental

10

beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." (*Jones v. Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724–1725.)

Plaintiffs did not plead facts supporting their status as third party beneficiaries and did not argue the existence of additional facts that could be pled to cure those deficiencies.

### 7. Negligence

The 13th cause of action for negligence is also defective. Plaintiffs allege they suffered extreme distress and other unspecified damages due to the mold growth in their home. There are no allegations that CBC did not do the job it was hired to do, or did something that caused the mold, or did something that exacerbated the mold or another condition that affected the plaintiffs. Plaintiffs did not allege any facts, in the 66 pages of allegations, to support the basic elements of a negligence cause of action, that CBC owed them a duty of care and breached the duty owed to plaintiffs, nor did they present additional facts that could be stated to cure the pleading deficiencies.

### 8. Leave to Amend

Plaintiffs contend the court abused its discretion by failing to grant leave to amend because the motion was CBC's first challenge to the pleadings and leave therefore should have been granted as a matter of course unless CBC was able to show prejudice. However, the correct standard for judging whether a trial court has abused its discretion in refusing to grant leave to amend is whether there is a reasonable possibility the pleading defects can be cured by amendment. (*Centinela*, *supra*, 1 Cal.5th at p. 1010.) As our Supreme Court has explained, the burden of demonstrating a reasonable possibility of curing pleading defects falls squarely *on the plaintiff*. (*Ibid.*)

11

Here, the majority of the allegations against CBC were in the form of general allegations stated collectively against all three of the defendants identified as "contractors." Plaintiffs made no argument before this court regarding the existence of additional facts that could be pled to cure their pleading deficiencies. Plaintiffs have not demonstrated that the trial court abused its discretion by denying leave to amend.

## DISPOSITION

The judgment of dismissal in favor of defendant and respondent CBC Restoration and Cleaning, Inc. is affirmed.

Defendant and respondent shall recover costs of appeal.


GRIMES, J.


WE CONCUR:



STRATTON, P. J.



HARUTUNIAN, J.*

---

*        Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12