Filed 7/31/23  Newman v. ADP Screening and Selection Services CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DOMENIQUE NEWMAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ADP SCREENING AND SELECTION SERVICES, INC., <br><br> Defendant and Respondent. | H049070 <br> (Santa Clara County <br> Super. Ct. No. 19CV346364) |

### I.  INTRODUCTION

In a putative class action complaint, plaintiff Domenique Newman[1] alleged that defendant ADP Screening and Selection Services, Inc. violated the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.).[2]  Plaintiff had applied for a job with Smith+Noble Home, Inc. (Smith), which in turn sought to obtain a background screening report about plaintiff from defendant.  Under the FCRA, a consumer reporting agency such as defendant may provide a consumer report for employment purposes only if the prospective employer, here Smith, has certified that it has complied with FCRA's written disclosure requirement to the prospective employee.  (§ 1681b(b)(1)(A)(i).)  Relevant

---

[1] Newman replaced the two originally named plaintiffs.

[2] All further statutory references are to title 15 of the United States Code unless otherwise indicated.

here, the FCRA requires a prospective employer to disclose to the job applicant, "in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." (§ 1681b(b)(2)(A)(i).) Plaintiff alleged that defendant provided the results of the background investigation to her prospective employer Smith, without first obtaining a certification from Smith that it had complied with the FCRA's standalone disclosure requirement.

Defendant moved for summary judgment on the ground that it had obtained the requisite certification from Smith before providing it with the background screening report about plaintiff. Plaintiff opposed the motion based on the following theory. The disclosure form that she received from Smith did not comply with the FCRA because, rather than being a standalone disclosure, it contained other "extraneous" information. Plaintiff contended that because defendant had given Smith sample disclosure forms with this extraneous information, defendant knew that Smith's certification that it had complied with the FCRA's standalone disclosure requirement in connection with the disclosure to plaintiff was false. The trial court granted defendant's motion for summary judgment after finding that plaintiff failed to provide evidence creating a triable issue of material fact.

On appeal, plaintiff contends that the trial court erred in granting defendant's summary judgment motion. For reasons that we will explain, we will affirm the judgment.

## II. FACTUAL BACKGROUND

Defendant is a consumer reporting agency. Smith engaged defendant to provide background screening reports regarding individuals who applied for jobs with Smith.

In connection with defendant providing the background screening reports to Smith, defendant and Smith agreed to a "Statement of Terms and Conditions." Under these terms and conditions, Smith "certifie[d] and agree[d] to": (1) "[M]ake a clear and conspicuous disclosure to the Consumer [job applicant], in writing, and in a separate

document before requesting the Report, that a Report may be obtained for employment purposes"; (2) "Obtain the proper written authorization from the Consumer for each Report prior to requesting any Report and retain such written authorization"; and (3) "Provide proper additional notices to the Consumer, a copy of the Report obtained, and a Summary of Rights, as required by the FCRA or any other applicable law, if an adverse decision is going to be made in connection with information in any Report obtained from [defendant] ADP. . . . If Reports will be used for employment decisions, Client certifies and agrees . . . to provide such additional notices required under the FCRA and any other applicable federal, state and local law . . . ."

Defendant had an "internet web portal" called ADP Select. Clients with a password could log into the web portal and order background screening reports, complete additional certifications, and review completed background screening reports.

On March 4, 2018, Smith ordered a background screening report regarding plaintiff through defendant's web portal, ADP Select. As part of the ordering process, Smith certified by clicking a box in the web portal that, among other things, it (1) "[is] and will remain in full compliance with the Fair Credit Reporting Act ('FCRA')," (2) "[r]eceived, for any employment-purposed Report, authorization from the Consumer, as required by 15 U.S.C. § 1681b(b)(2)"; and (3) "provided to the Consumer a clear and conspicuous disclosure in writing, consisting solely of the disclosure, that [it is] obtaining the Report." Smith would not have been able to proceed with the ordering process for the background screening report regarding plaintiff unless Smith completed this certification in defendant's web portal.

Prior to ordering the background screening report through defendant's web portal, Smith had provided a written disclosure to plaintiff indicating that it would order a consumer report, that is, a background report, from defendant in connection with plaintiff's employment application. The written disclosure, in addition to referring to plaintiff's rights under the FCRA, also included on the same page "state specific notices"

3

for job applicants who lived in one of nine listed states, such as California. Plaintiff signed a written authorization on February 26, 2018, allowing Smith to order the background report.

## III. PROCEDURAL BACKGROUND

### A. *The Civil Action*

In a putative class action, plaintiff alleged a single cause of action against defendant for violating section 1681b(b)(1) of the FCRA. In the operative first amended complaint, plaintiff alleged that defendant provided the results of background investigations on job applicants to prospective employers, such as Smith, without first obtaining a certification from the prospective employers that they had complied with the FCRA's standalone disclosure requirements. Plaintiff sought statutory penalties among other relief.

### B. *Defendant's Motion for Summary Judgment*

Defendant filed a motion for summary judgment or, in the alternative, summary adjudication. Defendant contended that it had obtained two certifications from Smith that complied with section 1681b(b)(1) regarding the background screening report about plaintiff. In this regard, defendant relied on (1) the certification by Smith as reflected in defendant's Statement of Terms and Conditions, and (2) the certification that Smith provided through defendant's web portal when ordering the report about plaintiff. Defendant further argued that plaintiff could not establish that it willfully violated section 1681b(b)(1). In support of its summary judgment motion, defendant provided a declaration from its manager of compliance, who described defendant's procedures for complying with the requirements of section 1681b(b)(1) before providing Smith with a background screening report about plaintiff.

### C. *Plaintiff's Opposition*

Plaintiff contended that the two certifications obtained by defendant were deficient. Specifically, the prospective certification that was contained in defendant's

Statement of Terms and Conditions was insufficient because an employer must certify that it already " 'has complied.' " Regarding the retrospective certification obtained through defendant's web portal, plaintiff argued that the language of the certification was inadequate. In view of these deficiencies, plaintiff contended that a triable issue of fact existed regarding whether defendant had willfully violated the law. Plaintiff also objected to a portion of the declaration by defendant's manager of compliance on the ground of lack of foundation.

In addition, plaintiff requested that the trial court grant a continuance so that she could engage in discovery. In a supporting declaration, plaintiff's counsel expressed a belief that defendant provided a legally noncompliant disclosure form containing "extraneous terms" to Smith, and Smith in turn gave the noncompliant disclosure form to prospective employees. Plaintiff sought to conduct additional discovery to confirm these facts. Plaintiff contended that if defendant was providing noncompliant disclosure forms for Smith to use, then defendant "necessarily knew that any certification by [Smith] that it provided a stand-alone disclosure was false."

### D. *Defendant's Reply*

Defendant contended that the certification it obtained from Smith during the ordering process on the web portal was compliant with section 1681b(b)(1). Defendant also reiterated that plaintiff could not show that any alleged violation was willful. Lastly, defendant argued that plaintiff's request for a continuance should be denied because the discovery she sought was not relevant to her claim. Defendant contended that its potential knowledge of a deficient disclosure by Smith could not undermine Smith's certification to defendant.

### E. *The Trial Court's First Order Regarding Defendant's Motion*

After a hearing on defendant's motion, the trial court issued a written order. The court overruled plaintiff's evidentiary objection to the declaration of defendant's compliance manager. Regarding the merits of defendant's summary judgment motion,

5

the court determined that the retrospective certification defendant obtained from Smith when Smith ordered the report about plaintiff satisfied the FCRA and that there was no triable issue of material fact regarding defendant's compliance with the FCRA. Second, on the issue of whether there was a willful violation of the FCRA, the court determined that, to the extent that the certification was "inartfully worded," defendant was "at most careless." The court determined that defendant "genuinely intended to comply" with the FCRA, and a contrary inference was not reasonable.

While the trial court found in defendant's favor on the issues that had been fully briefed by the parties, the court continued the hearing on the motion to permit plaintiff to conduct discovery. The discovery was limited to the issue of whether defendant knew that the certification provided by Smith was false, based on plaintiff's contention that defendant had provided noncompliant disclosure forms to Smith. The court also sought to obtain additional briefing from the parties regarding this new theory by plaintiff that defendant may be liable for defects in the disclosure forms used by Smith.

## F. *Supplemental Briefing*

In supplemental opposition, plaintiff contended that further discovery revealed that (1) defendant provided Smith with sample disclosure forms, and (2) defendant's sample forms were "materially identical" to the disclosure form that Smith gave to plaintiff. Plaintiff argued that the disclosure form that Smith gave to her did not comply with the FCRA because, rather than being a standalone disclosure, it contained "extraneous" information about state law rights. Plaintiff contended that because defendant knew the sample disclosure form it gave to Smith contained extraneous information, defendant also necessarily knew that Smith's certification that it had complied with the FCRA in connection with the disclosure to plaintiff was false. Plaintiff argued that allowing defendant to accept a certification that "it knows is false would render the FCRA's certification requirement illusory."

6

In a supplemental brief supporting its summary judgment motion, defendant contended that it did not know the content of the disclosure that Smith had provided to plaintiff, and therefore defendant was entitled to rely on the certification that it had received from Smith regarding its compliance with the FCRA. Defendant further argued that its Statement of Terms and Conditions regarding its relationship with Smith expressly indicated that defendant was not acting as an agent of Smith. Although acknowledging that it provided sample disclosure forms to clients such as Smith, defendant contended that (1) Smith was not required to use the sample forms provided by defendant; and (2) of the multiple sample forms that defendant provided to Smith over the years, the most recent sample form—issued two years prior to the disclosure form Smith gave to plaintiff—did not contain the extraneous state law information that plaintiff complained about. Defendant also contended that plaintiff's theory that it was liable for Smith's noncompliant disclosure to her was without legal support. Lastly, to the extent a deficient disclosure had been provided to plaintiff by Smith, defendant contended that plaintiff's remedy was to sue Smith, her prospective employer, which she had in fact done.

In support of its summary judgment motion, defendant again provided a copy of the 2012 Statement of Terms and Conditions, which governed the relationship between defendant and Smith, in which Smith agreed to (1) "make a clear and conspicuous disclosure to the Consumer, in writing, and in a separate document before requesting the Report, that a Report may be obtained for employment purposes," and (2) "[o]btain the proper written authorization from the Consumer for each Report prior to requesting any Report and retain such written authorization." The Statement of Terms and Conditions further provided: "[Defendant] will abide by all of the provisions of the FCRA as they pertain to the obligations of [defendant] acting as a consumer reporting agency. Such Screening Services are being provided solely at Client's [Smith's] request and instruction and Client acknowledges [defendant] is neither acting as an agent of Client nor making

7

any hiring decisions for or on behalf of Client." Defendant and Smith further "acknowledge[d] and agree[d] that [defendant] w[ould] not be deemed to be providing legal advice to Client [Smith] in connection with the Screening Services."

According to a supporting declaration from defendant's compliance manager, after the Statement of Terms and Conditions was executed by Smith in August 2012, defendant provided a sample disclosure form to Smith. Over the next several years, defendant provided five updated sample disclosure forms to Smith on October 12, 2012; December 7, 2012; December 10, 2014; January 10, 2015; and March 15, 2016. Prior to sending each updated sample form, defendant notified its clients, including Smith, that an updated sample disclosure form would be available.

The top of the initial sample disclosure form stated: "This form is provided as a sample and may not be suitable for every situation or every company. This form should not be considered legal advice or legal opinion. There may be state or municipality specific information that would affect your use of this form. You should review applicable law in your jurisdiction and consult experienced counsel for legal advice. If you use this form (either 'as is' or by modifying the form), you are responsible for all content." The sample form notified prospective employees that the prospective employer would be ordering a " 'consumer report' (a background report)" about the prospective employee from defendant. The form also included state-specific notices regarding the rights a prospective employee had in certain states, including California.

The four subsequent updated sample forms contained similar language cautioning about the use of the form, disclosing that a consumer report would be ordered, and including state specific notices.

The fifth updated form, which defendant provided to Smith on March 5, 2016, contained substantially similar cautionary language at the top of the form as follows, "This form is provided as a sample only. It should not be considered legal advice or legal opinion. You should review applicable law in your jurisdiction and consult experienced

8

counsel for legal advice. You are responsible for all content of this form or any other form you choose to use." Likewise, the form notified prospective employees that the prospective employer may be ordering a " 'consumer report' (a background report) or 'investigative consumer report' " about the prospective employee from defendant. However, unlike the prior forms, the first page of the 2016 sample form only referred to the FCRA and did not include any state specific notices.

According to the declaration from defendant's compliance manager, Smith was not required to use any of the sample disclosure forms that defendant provided. Further, defendant and Smith did not enter into any arrangement or contract in which Smith delegated its responsibility for complying with the disclosure requirements of section 1681b(b)(2). Outside of the instant litigation, defendant did not receive, review, or otherwise have any knowledge of the content of the written disclosure used by Smith and provided to plaintiff in relation to the background screening report that Smith ordered about her.

Defendant also never provided plaintiff with any disclosure on behalf of Smith in connection with the background screening report ordered by Smith. Aside from the instant litigation, defendant never had any interaction with plaintiff.

**G.** *The Trial Court's Second Order Regarding Defendant's Motion*

The trial court held a further hearing on defendant's motion. After the hearing, the court issued a written order granting defendant's summary judgment motion. In granting the motion, the court again determined that (1) the retrospective certification that defendant obtained from Smith when Smith ordered the report about plaintiff through defendant's web portal satisfied the FCRA; and (2) as a matter of law, there was no willful violation of the FCRA by defendant.

Regarding the issue of whether defendant knew that Smith's certification was false because defendant had supplied Smith with noncompliant sample disclosure forms containing extraneous information, the trial court determined that plaintiff failed to raise

9

a triable issue of fact. The court observed that defendant had provided Smith with a sample disclosure form in 2012 that was "similar" to the 2018 disclosure form that Smith provided to plaintiff, as both forms included state specific information on the same document as the disclosure. However, the court found that (1) defendant provided Smith with five updated sample disclosure forms since 2012; (2) the 2016 sample disclosure form was "substantially different" from the disclosure form that Smith gave to plaintiff and did not contain the state specific notices that were in the 2012 sample disclosure form; (3) Smith was not required to use any of defendant's samples; (4) all the samples contained disclaimers that they should not be considered legal advice and that defendant's client should consult with counsel; (5) Smith did not formally delegate its responsibility under the FCRA to defendant; (6) outside of the litigation, defendant did not have any knowledge of the disclosure forms used by Smith and provided to plaintiff; and (7) there was no evidence that at the time the 2012 sample disclosure form was issued by defendant, it knew the disclosure form violated the FCRA. The court further found that plaintiff failed to show any duty by defendant to proactively inform Smith that the 2012 sample disclosure should not be used, especially in light of defendant's disclaimers. The court concluded that plaintiff had not presented evidence creating a triable issue of material fact regarding Smith delegating its disclosure duties under section 1681b(b)(2) to defendant, or regarding defendant's knowledge that Smith was still using an outdated form similar to defendant's 2012 sample form when Smith ordered a background screening report about plaintiff in 2018, and certified its compliance with section 1681b(b)(2).

On March 12, 2021, a judgment was entered in defendant's favor. Plaintiff thereafter filed a notice of appeal.

## IV. DISCUSSION

Plaintiff contends that the trial court erred in granting defendant's summary judgment motion. She argues that a triable issue of material fact exists regarding whether

defendant violated the FCRA when it issued a consumer report based on a certification from Smith that defendant "had reason to know was false," as defendant had previously supplied Smith with sample disclosure forms that did not comply with the FCRA's standalone document requirement.

In analyzing whether the trial court properly granted summary judgment in defendant's favor, we first set forth the standard of review. We then consider whether plaintiff raised a triable issue of material fact.

### A. *Standard of Review*

A party may move for summary judgment or, in the alternative, summary adjudication. (Code Civ. Proc. § 437c, subd. (f)(1) & (2).) The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the movant] carries [this] burden of production," the burden of production shifts to the opposing party "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.)

"In reviewing a trial court's grant of summary judgment, . . . ' "[w]e take the facts from the record that was before the trial court when it ruled on that motion" ' and ' " ' "review the trial court's decision de novo . . . ." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

11

**B.** *Fair Credit Reporting Act*

### 1. Background

In passing the FCRA, Congress determined that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." (§ 1681(a)(3), (4).) To that end, the FCRA, in "regulat[ing] the consumer reporting agencies that compile and disseminate personal information about consumers," " 'imposes a host of requirements concerning the creation and use of consumer reports.' [Citation.]" (*TransUnion LLC v. Ramirez* (2021) ___U.S.___ [141 S.Ct. 2190, 2200].)

The FCRA was amended in 1996, due to congressional concern "that prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights. [Citation.] The disclosure and authorization provision codified at 15 U.S.C. § 1681b(b)(2)(A) was intended to address this concern by requiring the prospective employer to disclose that it may obtain the applicant's consumer report for employment purposes and providing the means by which the prospective employee might prevent the prospective employer from doing so—withholding of authorization. [Citation.] This provision furthers Congress's overarching purposes of ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy. [Citation.] Indeed, in addition to securing job applicants' privacy rights by enabling them to withhold authorization to obtain their consumer reports, the provision promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report." (*Syed v. M-I, LLC* (9th Cir. 2017) 853 F.3d 492, 496-497, fn. omitted (*Syed*).)

Under the FCRA, a consumer reporting agency includes any person who, for money, "regularly engages . . . in the practice of assembling . . . consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ."  (§ 1681a(f).)  A consumer report includes any written communication of "any information by a consumer reporting agency bearing on a consumer's credit worthiness, . . . character, general reputation, personal characteristics, or mode of living which is . . . expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for [¶] . . . [¶] . . . employment purposes . . . ."  (§ 1681a(d)(1)(B).)

## 2.  Prospective employer's disclosure obligations to prospective employee

Before a prospective employer can procure a consumer report for employment purposes, the following requirements must be met.  First, the prospective employer must make "a clear and conspicuous disclosure . . . in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes."  (§ 1681b(b)(2)(A)(i).)  Second, the consumer, that is, the prospective employee, must "ha[ve] authorized in writing . . . the procurement of the report by [the prospective employer]."  (§ 1681b(b)(2)(A)(ii).)

As we have just set forth, the FCRA requires a prospective employer to make a written disclosure to the job applicant that a consumer report may be obtained for employment purposes "in a document that consists *solely* of the disclosure."  (§ 1681b(b)(2)(A)(i), italics added.)  Initially, federal district courts in California reached conflicting conclusions regarding whether this requirement that the disclosure be in a standalone document was violated by the inclusion of information regarding state law rights in the same document.  (See, e.g., *Noori v. Vivint, Inc.* (C.D.Cal. Sep. 6, 2016, No. CV 16-5491 PA (FFMx)) 2016 U.S. Dist. Lexis 120963, *14-15 (*Noori*) [no violation of FCRA when single document contained both the FCRA-required

13

disclosure and information concerning state law rights], aff'd on other grounds (9th Cir. 2018) 726 Fed. Appx. 624; *Lagos v. Leland Stanford Junior Univ.* (N.D.Cal. Dec. 4, 2015, No. 5:15-cv-04524-PSG) 2015 U.S. Dist. Lexis 163119, *4-5 [state law notices included on FCRA disclosure form may violate the FCRA].)

In 2017, the Ninth Circuit Court of Appeals held that a document that included both the FCRA disclosure and a liability waiver violated the FCRA's requirement that the "document . . . consist[] solely of the disclosure" (§ 1681b(b)(2)(A)(i)). (See *Syed*, *supra*, 853 F.3d at pp. 497-498, 500-502.) The court, relying on dictionary definitions, reasoned in part that "[t]he ordinary meaning of 'solely' is '[a]lone; singly' or '[e]ntirely; exclusively.' [Citation.]" (*Syed*, *supra*, at p. 500.)

Nearly two years later, in 2019, the Ninth Circuit stated, "Consistent with *Syed*, we now hold that a prospective employer violates FCRA's standalone document requirement by including extraneous information relating to various state disclosure requirements in that disclosure." (*Gilberg v. California Check Cashing Stores, LLC* (9th Cir. 2019) 913 F.3d 1169, 1171 (*Gilberg*).) The court explained that "*Syed*'s holding and statutory analysis were not limited to liability waivers . . . ." (*Id.* at p. 1175.) The Ninth Circuit also refused to follow the federal district court's decision in *Noori*, *supra*, 2016 U.S. Dist. Lexis 120963, "which reasoned that the inclusion of information 'closely related' to FCRA's disclosure requirements does not violate the standalone document requirement. [Citation.]" (*Gilberg*, *supra*, at p. 1176.) The Ninth Circuit explained that its "subsequent decision in *Syed* . . . foreclose[d] that approach. *Noori*, moreover, did not explain how to determine what information would be 'closely related' to FCRA's disclosure requirements. Indeed, even 'related' information may distract or confuse the reader." (*Ibid.*)

### 3. Certification by prospective employer to consumer reporting agency

In addition to the obligations imposed on a prospective employer seeking a consumer report about a prospective employee, the FCRA also sets forth the conditions

14

under which a consumer reporting agency may provide a consumer report for employment purposes. Relevant here, the consumer reporting agency may provide a consumer report for employment purposes "only if" the prospective employer seeking the report "certifies" to the consumer reporting agency that the prospective employer "has complied with [the above-described disclosure requirement to the prospective employee] with respect to the consumer report." (§ 1681b(b)(1)(A)(i).)

### 4. Violations of the FCRA

The FCRA provides remedies for violations of its provisions. For example, a person, such as an employer, who "willfully fails to comply" with the FCRA may be liable to the consumer, including a prospective employee, for "actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000 . . . ." (§ 1681n(a)(1)(A).)

### C. *Analysis*

The trial court determined that defendant had obtained a proper certification from Smith, which Smith made on defendant's web portal when ordering the consumer report about plaintiff. On appeal, plaintiff concedes that this certification that defendant obtained from Smith "arguably on its face . . . did" comply with the certification requirement.

Plaintiff contends, however, that defendant "had reason to know" that its customers, including Smith, were using disclosure forms that did not comply with the FCRA's standalone document requirement because defendant had supplied the noncompliant forms to its customers. Although defendant provided Smith with a revised form in 2016, plaintiff argues that defendant did not tell Smith that it should no longer use the prior forms. Plaintiff contends that "[i]t would render the certification requirement completely hollow if a consumer reporting agency can accept a certification that it has reason to know is false." Plaintiff argues that therefore, the trial court should have found a triable issue of fact as to whether defendant complied with the FCRA when

defendant "issued a consumer report based on a certification that it had reason to know was false."

Assuming, without deciding, that a FCRA violation may occur if the consumer reporting agency had "reason to know" the employer's certification was false, we are not persuaded by plaintiff's argument that a triable issue of material fact exists. As the trial court found, (1) defendant provided Smith with five updated sample disclosure forms since 2012; (2) the last update, in 2016, was "substantially different" from the disclosure form that Smith gave to plaintiff in 2018, and the 2016 update did not contain the state specific notices that were contained in the 2012 sample disclosure; (3) Smith was not required to use any of defendant's samples; (4) all the samples contained disclaimers that they should not be considered legal advice and that Smith should consult with counsel; (5) Smith did not delegate its disclosure responsibility under the FCRA to defendant; and (6) outside of the litigation, defendant did not have any knowledge of the disclosure form used by Smith and provided to plaintiff.

Plaintiff contends that defendant's "disclaimer on the first five forms [before the final 2016 update] implies that the user can be sure that the form complies with federal law." She also argues that the Statement of Terms and Conditions, which governed the relationship between defendant and Smith, provided that Smith "certifie[d] and agree[d] to: [¶] . . . [¶] . . . Receive such communications as [defendant] deems necessary to ensure Client [Smith] is made aware of changes in procedure or applicable law."

Plaintiff fails to create a triable issue of material fact. The record reflects that in 2016, defendant provided Smith with an updated sample disclosure form that no longer contained state specific notices on the same page as the FCRA disclosure. Approximately two years later, however, Smith still provided a written disclosure to plaintiff that continued to include state specific notices on the same page as the FCRA disclosure. To the extent, as plaintiff argues, that the earlier sample forms created the impression that they were compliant with federal law, defendant's email notification that

16

an updated sample form was available and then providing the updated form in 2016, which omitted the state specific notices, would have indicated to Smith that the prior samples were outdated.

Plaintiff also argues that defendant failed to present evidence "that it told [Smith] that it should no longer use the prior five forms." As the trial court found, however, plaintiff failed to show any duty by defendant to proactively inform Smith that any prior sample disclosure should not be used, especially in light of defendant's disclaimers on all the samples that Smith itself was responsible for all the content in the forms, that the forms should not be considered legal advice by defendant, and that Smith should consult with counsel.

In sum, plaintiff failed to create a triable issue of material fact regarding whether defendant knew or had reason to know that Smith's certification – that it had provided the requisite disclosure in a standalone document to plaintiff – was false. In view of our conclusion that plaintiff failed to raise a triable issue regarding whether defendant violated the FCRA, we need not consider the parties' contentions concerning whether any violation was willful. Accordingly, plaintiff fails to demonstrate that the trial court erred in granting defendant's motion for summary judgment.

## V. DISPOSITION

The judgment is affirmed.

17

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
WILSON, J.

_____
BROMBERG, J.

*Newman v. ADP Screening and Selection Services, Inc.*
**H049070**